DIRECTOR, OFFICE OF WORKMEN'S COMPENSATION PROGRAM, UNITED STATES DEPARTMENT OF LABOR, Petitioner,

v.

ALABAMA BY–PRODUCTS CORPORATION, Respondent.

No. 76–2549.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1977.

William J. Kilberg, Sol. of Labor, Jean S. Cooper, Atty., Laurie M. Streeter, Assoc. Sol., Frank A. White, Atty., U.S. Dept. of Labor, Washington, D. C., for petitioner.

R. Gordon Pate, Birmingham, Ala., Neal C. Newell, Fournier J. Gale, III, James L. Birchall, Birmingham, Ala., for respondent.

Before GOLDBERG, SIMPSON and FAY, Circuit Judges.

GOLDBERG, Circuit Judge:

The Director, Office of Workers' Compensation Programs, United States Department of Labor, has taken this appeal seeking reversal of a decision and order of the Benefits Review Board, itself an adjudicative arm of the Department of Labor. The Board's decision vacated the decision and order of a hearing officer, Joseph Medicis, who had held that respondent Alabama By-Products Corporation was liable for the payment of black lung benefits to William Norman, a former coal miner, under Part C

of Title IV of the Federal Coal Mine Health and Safety Act of 1969, P.L. 91–173, 83 Stat. 742, 91st Cong., 1st Sess. (1969), as amended by the Black Lung Benefits Act of 1972, P.L. 92–303, 86 Stat. 150, 92d Cong., 2d Sess. (1972), now codified at 30 U.S.C. § 901 et seq. (1970 ed. and Supp. V, 1975). The Benefits Review Board based its decision on the belief that because Medicis was not an administrative law judge appointed pursuant to 5 U.S.C. § 3105 he was not qualified to conduct black lung hearings.

The parties raise two issues on appeal, although we must as a threshold matter reach a third. The first issue, not placed in question by either party, is whether this court has subject matter jurisdiction. Second, we must decide whether the Director has standing to petition for review of a decision reached by the Benefits Review Board. Third, we must decide whether the labyrinthine statutory provisions implicated by this dispute permitted a hearing officer [1] to conduct black lung hearings.

Like other circuit courts before us, we have struggled with the gordian knot Congress fashioned by cross-referencing the Federal Coal Mine Health and Safety Act of 1969 to the Longshoremen's and Harbor Workers' Compensation Act of 1927, Pub.L. 803, 69th Cong. (1927); amending the latter by the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L. 92–576, 92d Cong., 2d Sess. (1972); amending the Federal Coal Mine Health and Safety Act by the Black Lung Benefits Act of 1972; further amending the Federal Coal Mine Health and Safety Act in four successive Department of Labor Appropriation Acts, Pub.L. 93–192, 87 Stat. 748; Pub.L. 93–517, 88 Stat. 163; Pub.L. 94–206, 90 Stat. 7; Pub.L. 94–439, 90 Stat.

1421; and, in the coup de grace, adding the "delphic pronouncement" of a Joint Resolution, Pub.L. 94–504, signed by the President on October 1, 1976. See Krolick Contracting Corp. v. Benefits Review Board, 558 F.2d 685, at 686 (3d Cir. 1977). Like other courts before us, we cut the knot in order to effectuate the important purposes of the Federal Coal Mine Health and Safety Act as amended by the Black Lung Benefits Act (FCMHSA as amended)—to protect the health and safety of coal miners, to ensure that a miner suffering from black lung disease or his survivors will receive the benefits to which he is entitled, and most important to this appeal, to promote the prompt and vigorous processing of the large backlog of such claims that those entrusted with administering the program now confront. See H.R.Rep.No.91–563, 91st Cong., 1st Sess. (1969), reprinted in [1969] U.S. Code Cong. & Admin.News, p. 2503 (purpose of FCMHSA); S.Rep.No.92–743, 92d Cong., 2d Sess., reprinted in [1972] U.S.Code Cong. & Admin.News, pp. 2322–23 (purpose of Black Lung Benefits Act of 1972).

We conclude, as have our brothers in the Third, Fourth, Sixth, and Seventh Circuits that the Director has standing as a party before the court of appeals and that a hearing officer is qualified to adjudicate a claim for black lung benefits. Krolick Contracting Corp. v. Benefits Review Board, supra; Director v. National Mines Corp., 554 F.2d 1267 (4th Cir. 1977); Director v. Eastern Coal Corp., 561 F.2d 632 (6th Cir. 1977) (Slip. Nos. 76–1895, 1896, July 18, 1977); Director v. Peabody Coal Co., 554 F.2d 310 (7th Cir. 1977). Accordingly, we reverse the judgment of the Benefits Review Board.

---

1. We shall use the term "hearing officer" to refer to an individual who is not qualified as an administrative law judge or hearing examiner pursuant to 5 U.S.C. § 3105 (1970). The Administrative Procedure Act contains several provisions designed to make administrative law judges appointed under § 3105 independent of the agency involved in the hearings over which they preside. For example, pursuant to § 3105 such judges must be assigned to cases in rotation; pursuant to 5 U.S.C. § 7521 such judges may be removed by the agency only for good cause established and determined by the Civil Service Commission on the record after opportunity for hearing; pursuant to 5 U.S.C. § 5362 such judges are entitled to pay prescribed by the Civil Service Commission independently of agency recommendations or ratings. No such autonomy is accorded hearing officers who are employed by the agency involved in hearings over which they preside.

## I.

The FCMHSA as amended provides for the payment of benefits to coal miners who are totally disabled by pneumoconiosis (black lung disease) and to survivors of miners who died as a result of the disease or while totally disabled by it. The statutory scheme comprises three phases or periods of adjudication.

First period claims include those filed between December 30, 1969 and June 30, 1973. Unlike second and third period claims, first period claims are adjudicated and paid by the Secretary of Health, Education and Welfare. Pursuant to § 413(b) of Part B of the FCMHSA as amended, 30 U.S.C. § 923(b), the Secretary of HEW adjudicates claims in accordance with the procedures for determining disability insurance benefit payments set forth in § 221 of the Social Security Act, 42 U.S.C. § 421. No first period adjudications are involved in the case at bar.

Second period claims encompass those filed from July 1 to December 31, 1973. Section 415 of Part B, 30 U.S.C. § 925, establishes this six month duration as a transition period during which primary liability for black lung claims shifts from the federal treasury to the employer of the disabled or deceased miner, and primary responsibility for processing adjudicating claims shifts from HEW to the Department of Labor. If the claimant is entitled to black lung benefits, the employer becomes responsible for payment of benefits beginning on January 1, 1974. The United States is responsible for payment on these claims until December 31, 1973. *See generally Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The claimant in the case at bar filed on September 4, 1973, and thus falls within this second or transitional period. The hearing officer found the claimant entitled to benefits and ordered the United States to pay benefits accruing before January 1, 1974 and the respondent to pay all benefits accruing thereafter.

In all pertinent respects, other than the government's obligation for pre-1974 benefits, second period claims are treated as though they were third period claims. Although second period claims are adjudicated under § 415 of Part B, 30 U.S.C. § 925, the responsible employers are liable for benefits "as if the claim had been filed pursuant to part C of this subchapter and section 932 of this title had been applicable to such operator." 30 U.S.C. § 925(a)(5).

Third period adjudications are governed by Part C, 30 U.S.C. § 931–941. Beginning on January 1, 1974, all claims for benefits are, in the first instance, to be filed, processed, and paid under an approved state workmen's compensation law. If and only if the Secretary of Labor determines that the state has not provided adequate coverage, however, the Secretary shall adjudicate the claim and, if found liable, the employer shall pay it.

Procedures for hearings and a scheme for review were not made explicit, however, but were incorporated by reference to another statute. Section 422(a) of Part C, 30 U.S.C. § 932(a), provides that

> the provisions of Public Law 803, 69th Congress (44 Stat. 1424, approved March 4, 1927), as amended (other than the provisions contained in sections 1, 2, 3, 4, 7, 8, 9, 10, 12, 13, 29, 30, 31, 32, 33, 37, 38, 41, 43, 44, 45, 46, 47, 48, 49, 50, and 51 thereof) shall (except as otherwise provided in this subsection and except as the Secretary shall by regulation otherwise provide) be applicable to each operator of coal mine in such State with respect to death or total disability due to pneumoconiosis arising out of employment in such mine.

The statutory reference to the Longshoremen's and Harbor Workers' Compensation Act of 1927, as amended in 1969, contained in the provisions applicable to both second and third period adjudications is of central importance to this case.[2] Un-

---

2. A parallel reference as regards hearing procedures only is to be found at § 415(a)(4), 30 U.S.C. § 925(a)(4). This section governs the hearing procedures of second period adjudica-

der § 19 of that statute, federal workers' compensation benefits were determined by a deputy commissioner in the Department of Labor. Section 21(b) provided for review of his determination in the United States District Court.

The 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) made two critical changes. First, these amendments altered the review scheme by substituting for district court review a Benefits Review Board and by providing that the Board's decisions were reviewable in the United States Court of Appeals. Second, the 1972 amendments provided that initial hearings were to be conducted by administrative law judges qualified in accordance with the Administrative Procedure Act.[3]

Both the text and the legislative history of the 1972 amendments to the LHWCA are silent regarding black lung benefits. Apparently the problem of the cross-reference in black lung legislation never occurred to anyone responsible for amending the LHWCA. The Congress evinced no greater awareness when in 1972 it amended the FCMHSA, since no mention is made of either the scheme for review or the requirement of administrative law judges. Nevertheless, the cross-reference remained. The problem was to understand what it now meant.

The muddle created by the cross-reference became apparent when, after the 1972 amendments to the LHWCA, the Secretary of Labor requested the United States Civil Service Commission to appoint administrative law judges to hear black lung cases. The resulting contretemps threatened the entire enterprise envisaged by the authors of black lung legislation. The Commission

took the position that § 422(a) of the FCMHSA was a specific reference to the LHWCA of 1927 as it appeared in 1969. As then written, of course, the LHWCA did not require administrative law judges; a deputy commissioner conducted hearings. Relying on a rule of statutory construction that an adopting statute takes an adopted statute as it exists at the time of adoption, not as later amended, *see Hasset v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858 (1938); *Kendall v. United States ex rel. Stokes,* 37 U.S. (12 Pet.) 524, 624, 9 L.Ed. 1181 (1838), the Commission determined that the old LHWCA hearing and review scheme still applied to black lung cases. Accordingly, the Commission refused to appoint administrative law judges to hear black lung cases.

The Labor Department did not agree with this interpretation, but in order to expedite the processing of black lung claims it promulgated a regulation, 20 C.F.R. §§ 715.101(a)(27) (1975), which defined "administrative law judges" as "hearing officers," thereby permitting hearing officers not qualified under the Administrative Procedure Act to adjudicate claims. The Labor Department also assumed that review would be to the Benefits Review Board and then to the court of appeals. In short, the Labor Department took the position that §§ 415(a)(4) and 422(a) of the FCMHSA incorporated the applicable LHWCA provisions as amended in 1972 rather than as they stood in 1969. One claim was processed in this manner, and in *James E. Fields v. AKP Coal Co.,* 3 BRBS 269 (1976), *being reconsidered on other grounds,* the Board determined that the FCMHSA incorporated the LHWCA as amended in 1972 rather than as it appeared in 1969. The Board

tions. It provides that "to the extent appropriate" the Secretary shall "follow the procedures described in subsections (b), (c), and (d) of section 919 of Title 33." *See* note 4, *infra.*

**3.** Section 19(d) of the Longshoremen's Act as amended in 1972, 33 U.S.C. § 919(d), which is incorporated by §§ 415(a)(4) and 422(a) of the Federal Coal Mine Health and Safety Act as amended by the Black Lung Benefits Act of 1972, provides as follows:

Notwithstanding any other provisions of this Act, any hearing held under this Act shall be conducted by a hearing examiner qualified under [5 U.S.C. § 3105]. All powers, duties, and responsibilities vested by this Act . . in the deputy commissioners with respect to such hearings shall be vested in such hearing examiners.

assumed it had jurisdiction and held that in black lung cases, as in cases under the LHWCA, there must be a qualified administrative law judge. Relying on *Fields,* the Board reached the same result in the case at bar. It vacated the decision of a hearing officer who was not an administrative law judge.

## II.

The threshold issue in this case is whether we have subject matter jurisdiction. Although the respondent, Alabama By-Products, understandably does not contest our jurisdiction, since to do so successfully would also oust the Benefits Review Board of jurisdiction, we must reach the issue. If, as the Civil Service Commission contended, the FCMHSA incorporated the review scheme of the LHWCA as it existed in 1969 exclusive of subsequent amendment, then neither the Benefits Review Board nor this court has jurisdiction. We conclude that the rule of statutory construction of *Hasset v. Welch* and *Kendall v. United States, supra,* does not control, and that § 422(a) of the FCMHSA incorporated the review provisions of the LHWCA subject to subsequent legislative amendment of the LHWCA.[4] We hold that § 21(c) of the amended LHWCA, 33 U.S.C. § 921(c), vests this court with jurisdiction over the instant review petition.

In reaching this conclusion, we have followed the path blazed by Judge Pell in *Director v. Peabody Coal Co., supra,* 554 F.2d at 317–31, and traversed by other wanderers in the statutory thicket. *See Krolick Contracting Corp. v. Benefits Review Board, supra,* 558 F.2d 685. Judge Pell's scholarly opinion concludes that the *Hasset-Kendall* rule of construction does not apply because the FCMHSA is not a specific reference statute but a general one. A general reference statute brings into play the rule of construction that a dynamic rather

than a static incorporation of the law was intended; as applied to this case, it means that § 422(a) of the FCMHSA incorporated § 21(c) of the amended LHWCA. Other courts have reached the same result for different reasons. For example, the Fourth and Sixth Circuits have concluded that § 21(c) of the LHWCA vests the court of appeals with jurisdiction because the legislative history of the 1972 amendments to the LHWCA indicates that those amendments were intended also to amend the FCMHSA. *See Director v. National Mines Corp., supra,* 554 F.2d at 1273; *Director v. Eastern Coal Corp., supra,* 561 F.2d at 640. Although we find Judge Pell's analysis preferable, we agree with Judge Gibbons, who wrote for the Third Circuit in *Krolick Contracting Corp., supra,* 558 F.2d at 688, that "it is more important for the circuits to agree on who has jurisdiction over Part C Title IV, cases than that we agree on the rationale to support the conclusion."

Further support for the position we adopt in this case may be found in our previous construction of similar laws. Other federal worker compensation statutes have adopted by reference portions of the LHWCA in language similar to that found in the FCMHSA as amended by the Black Lung Benefits Act of 1972. For example, the Outer Continental Shelf Lands Act, 43 U.S. § 1331, *et seq.,* contains a similar cross-reference at § 1333(c). In *Presley v. Tinsley Maintenance Service,* 529 F.2d 433 (5th Cir. 1976), and *Offshore Food Service, Inc. v. Benefits Review Board,* 524 F.2d 967 (5th Cir. 1975), we entertained petitions for review of Outer Continental Shelf Lands Act awards processed under the *new* LHWCA procedures.

## III.

Although Alabama By-Products neglected to brief the issue, the respondent assert-

---

4. Nothing in § 415(a)(4) of the amended FCMHSA, 30 U.S.C. § 925(a)(4) (Supp. V 1975), which refers only to § 19 of the LHWCA, refers to the review procedures following the initial administrative hearing. The review procedures of the LHWCA are controlled by § 21 of the

latter Act, not § 19. Accordingly, the question whether this court has jurisdiction depends on the scope of the cross-reference in § 422(a) of the FCMHSA. *See* text and note at note 2, *supra.*

ed at oral argument that the Director lacked standing to appear before this court as party-petitioner. Respondent relied on *ITO Corp. v. Benefits Review Board*, 542 F.2d 903, 906–09 (4th Cir. 1976) (en banc), *vacated on other grounds*, —— U.S. ——, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977). In that case, the majority held that the Director lacked standing to respond to a petition to review an order of the Benefits Review Board awarding compensation to a longshoreman. The court reasoned that the Director lacked sufficient interest in the result because he had suffered no economic or other injury. The Third Circuit followed *ITO* in *Director v. Rochester & Pittsburgh Coal Co.*, 556 F.2d 565 (3d Cir. 1977), (per curiam) (Slip Nos. 76–1828, 1868 January 17, 1977), *overruled by Krolick Contracting Co. v. Benefits Review Board, supra*, 558 F.2d 685. Neither decision retains much vitality even within the circuit that issued it, and we decline to adopt what we deem the ill-considered view of standing espoused in those decisions.

The Fourth Circuit, in the context of a factual situation virtually identical to that in the case at bar, has declined to follow *ITO* and instead granted the Director standing to petition for review of a Benefits Review Board decision. *Director v. National Mines Corp., supra*, 554 F.2d at 1271. The court noted that in *ITO* the government, and consequently the Director, had no direct financial interest in the outcome of the case since only the stevedoring companies were potentially liable. By contrast, in *National Mines,* the Director had a direct financial interest in the claims before the court. Three of those claims, like the claim in the instant case, were filed under Part B of the FCMHSA as amended and fell within the second or transitional phase of the black lung program. Pursuant to § 415(a)(5) of the FCMHSA as amended, 30 U.S.C. § 925(a)(5), the employer has liability for black lung benefits after January 1, 1974; the government has sole liability for such benefits accruing before that date. Accordingly, the hearing officers in *National Mines,* like the hearing officer in the case at bar, ordered the employers to pay benefits

after January 1, 1974, or to reimburse the Department of Labor for sums already paid to the claimant. Thus, in *National Mines,* as in the case at bar, the hearing officers' awards were favorable to the Director insofar as he was judged entitled to reimbursement for funds expended.

The Fourth Circuit concluded in *National Mines* that the Board's vacating the hearing officers' awards made the Director a "person adversely affected or aggrieved by a final order of the Board" within the meaning of the statute authorizing judicial review, §. 21(c) of the LHWCA, 33 U.S.C. § 921(c). That decision is open to the objection, however, that insofar as the hearing officers' awards were favorable to the government, it was only because those awards ordered reimbursement of sums the Director "gratuitously" caused to be disbursed to the claimant pursuant to an adjudication of entitlement vacated by the Board.

■ We find this objection unpersuasive. If the Director is correct and the hearing officer's determination should stand, then the claimant is entitled to benefits and the Director is entitled to be reimbursed by the employer for benefits paid after January 1, 1974. That a determination on the merits upholding the hearing officer's determination would thus be favorable to the government satisfies the requirement that it have sufficient economic stake in the decision to bring this petition for review. As a practical matter, whatever the ultimate determination on the merits regarding the claimant's entitlement, the fact remains that the Department of Labor has paid the claimant benefits after January 1, 1974. The Director is therefore entitled to seek reimbursement from the employer, by seeking reversal of the Board's determination, rather than from the claimant.

In short, we agree with Judge Pell in *Director v. Peabody Coal Co., supra*, 554 F.2d at 336–37, that standing, jurisdiction, and the merits of this sort of case are so intermeshed that "any characterization of the payments as so 'gratuitous' as to vitiate

the Director's standing inexorably brings into the standing equation the basic merit issues which the parties have been pressing upon the courts of appeals." Because the Department of Labor's office of Workers Compensation Programs has an economic interest in being reimbursed by the instant claimant's employer, we agree that the Director has standing pursuant to 21(c) of the LHWCA, 33 U.S.C. § 921(c).

Entirely apart from considerations of pecuniary interest, however, we hold that the Director has standing to appear as petitioner before this court. The Director has two administrative interests that suffice to give him standing. Should the Board's decision stand, the Director will be forced to devote substantial administrative resources to the readjudication of claims initially heard by hearing officers not appointed under 5 U.S.C. § 3105. Second, since § 421(b)(2)(F) of the amended FCMHSA, 30 U.S.C. § 931(b)(2)(F), directs the Secretary to assess the adequacy of state workmen's compensation laws by determining whether they are consistent with procedures set forth in the incorporated LHWCA, the Secretary or his designated officials need to know whether the amended or the original LHWCA provisions are applicable. As Judge Pell noted for the court in *Director v. Peabody Coal Co., supra,* 554 F.2d at 338:

> [T]he Congressional intent that adequate state programs eventually supplant the interim federal responsibility for payments will be totally frustrated if the incorporation by reference question presented in the Director's review petitions is left unresolved . . . . Thus, even apart from the readjudication of claims . . . the whole transitional nature of the Part B–Part C statutory interface will be disrupted by a restrictive standing ruling.

Although in the case at bar, unlike *Peabody,* the parties do not directly raise the incorporation by reference question, we have found it necessary to resolve that question in order to decide whether to take jurisdiction. The incorporation by reference question was thus implicitly raised by the Director's petition, and we agree with the Seventh Circuit in *Peabody* that a final judicial resolution of that question is called for.

■ In thus designating the Director in his administrative capacity a "person adversely affected or aggrieved" pursuant to § 21(c) of the LHWCA, 33 U.S.C. § 921(c), we reject the notion that we must show that the Director has suffered some distinctly personal injury. *Contra, Director v. Rochester & Pittsburgh Coal Co., supra,* 556 F.2d 565 (Slip op. at 4). As Judge Edwards, writing for the Sixth Circuit in *Director v. Eastern Coal Corp., supra,* 561 F.2d at 645, observed:

> It would be strange, indeed, if the designated representative of a department of the United States Government authorized by Congress to disburse millions of dollars in benefits to citizens could not appear as a party to represent the government in important litigation concerning administration of the Act authorizing the disbursement.

In the case at bar, the Director is the sole representative of the Department of Labor before this court and has initiated the appeal. We hold only that under the unusual circumstances of this case, when an adverse determination would force the Director to expend resources to readjudicate many black lung claims or when no final resolution would leave the administration of the transition phase of the program in a limbo of uncertainty, the Director's interests as administrator of the black lung program are sufficiently bound up with the case at bar that he must be granted standing to appear as petitioner.

## IV.

■ Having concluded that this court has subject matter jurisdiction and that the Director has standing to petition for review of the Board's determination, we are now in a position to reach the merits of the dispute. In Part II, *supra,* we concluded that the 1972 amendments to the review scheme of the LHWCA apply in second and third period adjudications under the FCMHSA as

amended. The same reasoning leads to the conclusion that the 1972 amendments to the hearing scheme of the LHWCA also apply to the FCMHSA as amended. It will be recalled that prior to the 1972 LHWCA amendments, there was no requirement that qualified administrative law judges adjudicate claims. Under § 19(d) of the LHWCA as amended, 33 U.S.C. § 919(d), however, hearings must be conducted by administrative law judges qualified under 5 U.S.C. § 3105.

Faced by the Civil Service Commission's mistaken insistence that the 1972 LHWCA amendments did not apply to the FCMHSA and the Commission's consequent refusal to appoint qualified administrative law judges, the Secretary of Labor promulgated 20 C.F.R. § 715.101(a)(27) to allow hearing officers not qualified under 5 U.S.C. § 3105 to adjudicate black lung claims. The questions before this court are whether 20 C.F.R. § 715.101(a)(27) was promulgated in accordance with the authority granted by law to the Secretary and whether a compensation award rendered by a person appointed pursuant to 20 C.F.R. § 715.101(a)(27) is valid and enforceable.

The Director argues strenuously that §§ 415(b) and 422(a) of the FCMHSA as amended, 30 U.S.C. § 925(b), § 932(a), grant the Secretary authority to promulgate such regulations as are necessary to carry out the mandate of the FCMHSA, that the Civil Service Commission's refusal to provide qualified administrative law judges for the black lung program created the necessity for 20 C.F.R. § 715.101(a)(27), and that when a regulation is promulgated in the face of necessity it must be upheld unless the necessity is falsely alleged or there is an express prohibition. However all that may be, we would not hesitate to strike down 20 C.F.R. § 715.101(a)(27), which is entirely

inconsistent with § 19(d) of the amended LHWCA as incorporated into the FCMHSA, were this departure from the terms of the statute not expressly authorized by Congress.

■ In the last four Department of Labor Appropriations Acts the Congress, apparently aware of the impasse between the Civil Service Commission and the Department of Labor, specifically authorized the Secretary to deviate from the LHWCA § 19(d) requirement of qualified administrative law judges.[5]

Typical of these amendments is the language of the Departments of Labor and Health, Education, and Welfare Appropriation Act, 1974, Pub.L. No. 93–192, 93d Cong., 1st Sess., 87 Stat. 746–758:

SPECIAL BENEFITS FOR DISABLED COAL MINERS

For carrying out title IV of the Federal Coal Mine Health and Safety Act of 1969, including the payment of travel expenses either on an actual cost or commuted basis, to an individual for travel incident to medical examinations, and to parties, their representatives and all reasonably necessary witnesses for travel within the United States, Puerto Rico, and the Virgin Islands, to reconsideration interviews and to proceedings before administrative law judges, $967,868,000: *Provided,* That such amounts as may be agreed upon by the Department of Health, Education, and Welfare and the Postal Service shall be used for payment, in such manner as said parties may jointly determine, of postage for the transmission of official mail matter by States in connection with the administration of said Act.

Benefit payments after April 30: For making, after April 30 of the current fiscal year, payments to entitled benefici-

**5.** The relevant paragraph appears verbatim in the Departments of Labor and Health, Education, and Welfare Appropriation Act, 1974, Pub.Law 93–192, 87 Stat. 748; Departments of Labor and Health, Education and Welfare Appropriation Act, 1975, Pub.L. 93–517, 88 Stat.

1636; Departments of Labor and Health, Education, and Welfare Appropriation Act, 1976, Pub.L. 94–206, 90 Stat. 7; Departments of Labor and Health, Education, and Welfare Appropriation Act, 1977, Pub.L. 94–439, 90 Stat. 1421.

aries under title IV of the Federal Coal Mine Health and Safety Act of 1969, for the last two months of the current fiscal year, such sums as may be necessary, the obligations and expenditures therefor to be charged to the appropriation for the succeeding fiscal year.

*Whenever the Commissioner of Social Security finds it will promote the achievement of the provisions of title IV of the Federal Coal Mine Health and Safety Act of 1969, qualified persons may be appointed to conduct hearings thereunder without meeting the requirements for administrative law judges appointed under 5 U.S.C. 3105, but such appointments shall terminate not later than December 31, 1974: Provided, That no person shall hold a hearing in any case with which he has been concerned previously in the administration of such title.*

*Id.* (emphasis added).[6]

■ There is no doubt that Congress can authorize a deviation from established law by a provision in an appropriation act. *See United States v. Dickerson,* 310 U.S. 554, 555, 60 S.Ct. 1034, 1035, 84 L.Ed. 1356 (1940). Respondents argue, however, that the only "activities" to which the appropriation act provision applies are compensation benefits payable out of the public treasury. They insist that Pub.L. 93–192 and its suc-

cessors authorize the Secretary to use non-qualified hearing officers only in processing claims for which the Department of Labor rather than the claimant's employer has the responsibility for paying benefits. This precise argument has been rejected by every court that has considered it, *see Director v. National Mines Corp., supra,* 554 F.2d at 1275; *Director v. Eastern Coal Corp., supra,* 561 F.2d at 652; *Director v. Peabody Coal Co., supra,* 554 F.2d at 340, and we do not think the merit of the argument has escaped our brethren. The appropriation acts state that the Secretary may appoint individuals not qualified under 5 U.S.C. § 3105 to hear cases involving the payment of compensation, benefits, and expenses. Nothing in the acts or their legislative histories suggests that the relevant paragraph was not designed to apply to adversary proceedings involving employer liability.

■ The respondent's final argument is that the language of the appropriation acts is inconsistent with the requirement of 5 U.S.C. § 559. That section provides in part that no subsequent statute may be held to supersede or modify provisions of the Administrative Procedure Act relating to the appointment of qualified administrative law judges pursuant to 5 U.S.C. § 3105, except to the extent that it does so expressly.[7]

---

6. There will be no need to include this language in future appropriations acts because Congress has, in even more express terms, declared that the Secretary is free to appoint hearing officers to conduct black lung adjudications. On October 15, 1976, President Ford signed Pub.L. 94–504, 90 Stat. 2428, which reads as follows:

Be it resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that qualified individuals appointed by the Secretary of Labor may hear and determine claims for benefits under part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969 and under section 415 of such Act. For purposes of this Joint Resolution, the term "qualified individual" means such an individual, regardless of whether that individual is a hearing examiner appointed under section 3105 of title 5, United States Code. Nothing in this Joint Resolution shall be deemed to

imply that there is or is not in effect any authority for such individuals to hear and determine such claims under any provision of law other than this Joint Resolution.

As Judge Gibbons noted in *Krolick Contracting Corp. v. Benefits Review Board, supra,* 558 F.2d at 690 n. 4, the last sentence was added by Congress apparently "to be certain that the five circuits which were wrestling with the cryptogram would be required to solve it. Certainly a legislative solution could have been made applicable to all pending legislation."

7. 5 U.S.C. § 559 provides in pertinent part:
Subsequent statute may not be held to supersede or modify this subchapter, chapter 7, sections 1305, 3105, 3344, 4301(2)(E), 5362, or 7521 of this title, or the provisions of section 5335(a)(B) of this title that relate to hearing examiners, except to the extent that it does so expressly.

Because the language of the relevant paragraph of the appropriation acts expressly modifies the administrative law judge requirement of 5 U.S.C. § 3105, the acts do not contravene 5 U.S.C. § 559.

Accordingly, we hold that the respondent has not overcome the presumptive validity of the contested regulation. Our result is, to be sure, dictated by logic. But even if it were not, we should, at the risk of being bromidic, follow the apothegm that a page of history is worth a volume of logic, particularly when justice is havened in history. The history of the black lung program tells us that expedition in administration must be our guiding principle in parsing the exquisite syntax in which the many voices of Congress speak.

On our march through the statutory thicket, we are confident that our conclusion views the forest rather than merely the trees. We agree with the Seventh Circuit that "the failure to promulgate a regulation such as 20 C.F.R. § 715.101(a)(27) would have brought the FCMHSA benefits program to a grinding halt and frustrated the Congressional intent that miners and their relatives receive benefits." *Director v. Peabody Coal Co., supra,* 554 F.2d at 341. Finding that regulation valid, we must reverse the decision of the Benefits Review Board and remand the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.