DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Washington, D. C., Petitioner,

v.

DONZI MARINE, INC., Firemen's Insurance Company, Boating Industry Association, and National Association of Engine and Boat Manufacturers, Respondents.

No. 77–1960.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1978.

Carin A. Clauss, Sol. of Labor, Laurie M. Streeter, Assoc. Sol., Ronald E. Meisburg, Atty., Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C., for petitioner.

John E. Houser, Jacksonville, Fla., for Donzi Marine, and Firemen's Ins. Co.

Robert H. Koehler, John V. E. Hardy, Washington, D. C., for Boating Ind. Assoc. and Nat'l Assoc. of Engine and Boat Manufacturers.

Benefits Review Board, Washington, D. C., for other interested party.

Before JONES, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

The Director of the Office of Workers' Compensation Programs in the Department of Labor filed this petition to review a decision of the Benefits Review Board rendered under the Longshoremen's and Harbor Workers' Compensation Act, as amended in 1972, 33 U.S.C. §§ 901 et seq. (1976). The substantive question in controversy is the extent to which the Act's scheme of workers' compensation applies to the employees of small boat builders, marine operators, and other firms in the recreational boating industry.[1] However, though the question involved is important, we conclude that the Director does not have standing

1. The position of the Department of Labor (as articulated in a June 6, 1975 notice to interested parties) is that the Act applies to recreational boat builders and marinas. In a declaratory judgment action brought by trade associations in the recreational boating industry, a federal district court has held to the contrary. *Boating Industry Associations v. Marshall*, No. C–76–2550 RHS (N.D.Cal., Jan. 31, 1978). The Secretary of Labor has filed a notice of appeal of that decision.

under the Act to petition for review of the decision of the Board. Resolution of the substantive controversy must await the petition of a party with standing under the Act to invoke our appellate powers.[2]

## I

In 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act to provide a two-step process for review of any compensation order entered under the Act by a duly appointed hearing officer. 33 U.S.C. § 921 (1976). Pursuant to section 921, as amended, "any party in interest" may appeal the decision of the hearing officer to the newly established Benefits Review Board. 33 U.S.C. § 921(b) (1976). Subsequently, "any person adversely affected or aggrieved by a final order of the Board" may appeal that order to the United States court of appeals of the appropriate circuit. 33 U.S.C. § 921(c) (1976).[3]

Thus, the Act grants standing to appeal an order of the Board *only* to specified persons: those "adversely affected or aggrieved" by the Board's order.

In this case, the claimant, Vitaliano Napoles (an employee of Donzi Marine, Inc., a builder of small boats), prevailed before the hearing officer, who found Napoles entitled to compensation under the Act for injuries sustained in the course of his employment. Donzi Marine and its insurance carrier appealed the award to the Benefits Review Board. In a decision issued April 6, 1977, the Board vacated the compensation award, finding that the claimant was not engaged in "maritime employment," did not therefore qualify as an "employee" as defined in the Act, and, consequently, was not covered by the Act's compensation provisions.[4] Thereafter, the Director sought review in this court of the Board's decision.[5] Na-

---

**2.** Our decision is based on the provision of the section of the Act (33 U.S.C. § 921(c) (1976)) authorizing a review of adverse decisions of the Benefits Review Board. Because we conclude that the Director has no standing under the Act to appeal the Board's decision, we need not determine whether, as a constitutional matter, the Director can allege the distinct and palpable injury to himself necessary to make out a "case or controversy" between himself and the respondent within the meaning of Article III. Also, because under the Act Congress has granted a right of appeal to specified persons, we need not consider prudential standing rules of judicial creation. In sum, this case provides no occasion to consider either the constitutional limitations on federal court jurisdiction or the discretionary limitations on its exercise. *See generally Warth v. Seldin*, 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975).

**3.** Section 921(c) provides in pertinent part:
Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.
33 U.S.C. § 921(c) (1976).

**4.** As amended in 1972, the Act provides that "[c]ompensation shall be payable under this chapter in respect of disability or death of an employee . . . ." 33 U.S.C. § 903(a)

(1976). The Act defines "employee" as "any person engaged in maritime employment . . . ." 33 U.S.C. § 902(3) (1976). Respondent Donzi argued before the Benefits Review Board, and continues to argue before this court, that employees of small boat builders are not engaged in "maritime employment" and, hence, are not covered by the Act. The Board did not, however, rely on that broad argument in rejecting Napoles's claim. Instead, it held on narrower grounds that Napoles was not covered because Donzi "does not have any employees engaged in the construction of vessels over navigable waters [as defined prior to the 1972 amendments] or on a dry dock, building way or marine railway." *Napoles v. Donzi Marine, Inc.*, BRB No. 76–262 (April 6, 1977).

**5.** It is worthwhile to point out that, as the result of administrative regulations, the Director is authorized to appeal to and appear before the Benefits Review Board as a "party" or "party in interest." *See* 20 C.F.R. § 801.-2(10) (defining "party" or "party in interest" to mean "the Secretary or his designee and any person or business entity aggrieved or directly affected by the decision or order from which an appeal is taken"). Of course, that the Director may be a "party" to proceedings before the Board does not mean that he is a person "adversely affected or aggrieved" by a decision of the Board. *See I. T. O. Corp. of Baltimore v. Benefits Review Board*, 4 Cir., 1976, 542 F.2d 903, 908–09.

poles, the claimant, did not join in the Director's petition for review, and, since the time for appeal by the claimant has long since passed, the order of the Board is final as to him.

Thus, the threshold issue upon which our power to proceed depends is whether the Director, the sole petitioner, is "adversely affected or aggrieved" by the Board's decision as required by section 921(c). If not, the Director is not empowered to seek review in this court, and, in the absence of a petitioner with the requisite stake in the outcome, the petition must be dismissed.

## II

In determining whether the Director can meet the statutory standing requirement, we first outline the responsibilities conferred upon the Director by the Act. Then we determine whether any interest of the Director arising from those responsibilities is adversely affected by the decision rendered by the Board, in this case a decision

that the particular claimant's employment is not covered by the Act.

The Director of the Office of Workers' Compensation Programs is an officer of administrative creation to whom the Secretary of Labor has delegated the responsibilities conferred upon him by the Act. *See* 20 C.F.R. §§ 701.201, 701.202 (1978). Those responsibilities fall into four discernible categories. The first category consists of a mélange of varied administrative and supervisory responsibilities vested in the Secretary by specific sections of the Act.[6] The second category consists of the broad administrative duties outlined in section 939, including the duty to provide assistance to persons covered by the Act in processing their claims and receiving compensation.[7] The third category consists of responsibilities flowing from the Secretary's duty to administer the special fund established by the Act for payment of certain benefits in specified circumstances.[8] Finally, the

---

6. For example, section 906 requires the Secretary to determine the national average weekly wage for use in computing minimum and maximum limits on compensation awards, 33 U.S.C. § 906 (1976); section 907 gives the Secretary responsibility to supervise the medical examinations and medical care for which the Act provides; *id.*, § 907; section 914 requires the Secretary to prescribe forms for certain notices required under the Act, *id.*, § 914; section 919 authorizes the Secretary to prescribe regulations in regard to the filing of claims and the notification of employers, *id.*, § 919; section 923 authorizes the Secretary to provide for reporting of hearings before the deputy commissioners and the Benefits Review Board, *id.*, § 923; and section 932 gives the Secretary responsibility to authorize carriers to insure payment of compensation awards or to authorize direct payment by employers, *id.*, § 932.

7. Additionally, section 939(a) gives the Secretary broad authority to make rules and regulations for administration of the Act, to appoint deputy commissioners to adjudicate claims and to fix their compensation, and to make expenditures necessary for administration of the Act. Section 939(b) gives the Secretary authority to establish compensation districts and to assign deputy commissioners to each district. Finally, section 939(c)(2) authorizes the Secretary to direct vocational rehabilitation of permanently disabled employees and to furnish to them prosthetic devices. 33 U.S.C. § 939 (1976).

8. *See* 33 U.S.C. § 944 (1976). The contents of the fund come from four sources: (1) payment of $5,000 by the employer for the death of an employee for whom there is no person entitled to receive the available compensation; (2) pro rata payments by all carriers and self-insurers in accordance with a formula determined by the Secretary to maintain adequate reserves; (3) amounts collected as fines and penalties under the Act; and (4) a $2,000,000 appropriation under the 1972 amendments to the Act, to be repaid into the Treasury no later than five years from the date of deposit. Section 944(a) specifically provides that the money and securities in the fund, although held in trust by the Treasurer of the United States, shall not be money or property of the United States. The proceeds of the fund are available for six categories of payments: (1) adjustments in compensation pursuant to sections 910 and 911 for total permanent disability or death which occurred prior to the 1972 amendments; (2) payments under section 908(f) on account of injuries which increase prior disability; (3) payments pursuant to sections 908(g) and 939(c)(2) for maintenance for employees undergoing vocational rehabilitation and for rehabilitation services; (4) payments pursuant to section 918 in cases where the employer is insolvent and has defaulted in payment of compensation awards; (5) repayments to the Treasury of the $2,000,000 appropriation under section 944(e); and (6) payments to defray the expense of medical examinations under section 907.

fourth category relates to the authority of the Secretary to promulgate and enforce safety rules and regulations.[9]

Close analysis of each category of responsibilities exposes no interest of the Director, either pecuniary or administrative, which is adversely affected by the Board's decision in this case.

Under the compensation scheme of the Act, the United States government (represented by the Secretary of Labor and his delegate, the Director) is not itself responsible for payment of any benefits to employee claimants and hence has no direct pecuniary interest in compensation proceedings. In that respect, this case involving the legal question of the Director's standing to seek review of a Board decision under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) is clearly distinguishable from cases cited by the Director involving the different question of his standing to seek review of a Board decision rendered under the Federal Coal Mine Health and Safety Act (FCMHSA).[10] Under the FCMHSA, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. §§ 901 et seq. (1976), the government itself is responsible in certain circumstances for payment of benefits with government funds. Thus, in several cases in which the government had already disbursed benefits to employees for which it was entitled to reimbursement

from an employer with primary liability, courts have held that the Director, representing the government, has standing to seek review of a Board decision rejecting a holding of employer's liability and, hence, jeopardizing the government's right to reimbursement. *See Director v. Alabama By-Products Co.*, 5 Cir., 1977, 560 F.2d 710, 715–17; *Director v. Peabody Coal Co.*, 7 Cir., 1977, 554 F.2d 310, 334–38; *Director v. National Mines Corp.*, 4 Cir., 1977, 554 F.2d 1267, 1271–72; *Director v. Eastern Coal Corp.*, 6 Cir., 1977, 561 F.2d 632, 641–49. In each of those cases, the court stressed the government's direct pecuniary interest in establishing its right to recover funds already disbursed. In this case brought under the LHWCA rather than the FCMHSA, no such direct pecuniary interest of the government exists. No government funds have been disbursed, and no such funds will be disbursed as a result of the Board's decision.

The LHWCA does establish a special fund, under the custodianship of the Treasurer of the United States and the administration of the Director, from which payments may be made to claimants in certain circumstances. *See* 33 U.S.C. § 944 (1976).[11] However, even if we assume for the sake of argument that the government or the Director may be somehow adversely affected as a result of claims against the fund,[12] the

9. *See* 33 U.S.C. § 941 (1976). Section 941(e) specifically authorizes the Director to bring an action in federal district court to restrain violations of his safety regulations.

10. The FCMHSA provides through cross-reference that the compensation procedures of the LHWCA shall be applicable to claims against employers for black lung benefits. 30 U.S.C. § 932(a) (1976). Although the FCMHSA refers explicitly to the LHWCA as it stood prior to the 1972 amendments, which restructured the compensation procedures, the circuit courts have uniformly held that the cross-reference was a general one and that the FCMHSA was intended to incorporate LHWCA procedures subject to future amendments. *See Director v. Alabama By-Products Co.*, 5 Cir., 1977, 560 F.2d 710, 715, and cases cited therein. Hence, in cases arising under the FCMHSA, the standing of the Director to appeal a Board decision depends, as it does under the LHWCA, on wheth-

er the Director is "adversely affected or aggrieved."

11. *See* note 8 *supra.*

12. Such an assumption is plausible although by no means inescapable. On one hand, the Act expressly provides that the contents of the fund "shall not be money or property of the United States," 33 U.S.C. § 944(a) (1976). Thus, disbursements from the fund are somewhat different in character from disbursements of true government funds under the FCMHSA. On the other hand, the payments into the fund include fines levied and collected by the government, and a government loan, scheduled to be repaid by 1978, provided initial support. *See* note 8 *supra.* Furthermore, the Director, as administrator of the fund, may well have an implicit obligation to protest unjustified claims against it and to prevent unwarranted dissipation of its contents.

decision of the Board in this case creates no such claim. In his brief, the Director suggests that, as a result of the Board's decision in this case, firms in the recreational boating industry might discontinue their insurance protection under the Act in reliance on the Board's ruling; and that, if the Board's ruling is reversed in some future case, the special fund might be exposed to substantial liabilities to employees of insolvent, uninsured firms. That argument, however, is entirely too tenuous, resting as it does on wholly speculative premises (such as the assumption that an employer would discontinue insurance coverage prior to conclusive judicial resolution of the controversy regarding the Act's coverage and thereby expose himself to considerable liability without the protection of insurance).

Careful review of the LHWCA and the responsibilities vested in the Director also reveals no administrative interest on his part which has been adversely affected by the decision of the Board in this case. In that respect, the circumstances relating to the standing question in this case are very clearly distinguishable from those in the cited cases arising under the FCMHSA. In those cases, the courts discerned certain administrative interests of the Director (in addition to the pecuniary interests previously discussed) which were adversely affected by the particular decisions rendered by the Board. In each case, the substantive issue in controversy was whether the hearing officer before whom the claim in question was adjudicated needed to meet the qualifications of an administrative law judge appointed under the Administrative Procedure Act.[13] In each case, the Board vacated the decision of a hearing officer who did not qualify as an administrative law judge. Subsequently, in each case, the court of appeals reversed the Board at the behest of the Director. In concluding as a threshold matter that the Director had standing to appeal the Board's decision in such a case, this court explained:

> The Director has two administrative interests that suffice to give him standing. Should the Board's decision stand, the Director will be forced to devote substantial administrative resources to the readjudication of claims initially heard by hearing officers not appointed under [the Administrative Procedure Act]. Second, since § 421(b)(2)(F) of the amended FCMHSA, 30 U.S.C. § 931(b)(2)(F), directs the Secretary to assess the adequacy of state workmen's compensation laws by determining whether they are consistent with procedures set forth in the incorporated LHWCA, the Secretary or his designated officials need to know whether the amended or the original LHWCA provisions are applicable.

*Director v. Alabama By-Products Co.,* 5 Cir., 1977, 560 F.2d 710, 717. Thus, the nature of the Board's decision in the FCMHSA cases was such that legitimate administrative interests of the Director were adversely affected.

The same cannot be said regarding the case before us, involving the LHWCA rather than the FCMHSA, and a Board decision concerning the overall coverage of the Act rather than the qualification of hearing officers. The Board decision in this case imposes no added administrative burden on the Director. It creates no problem requiring increased expenditure of administrative resources. It creates no confusion requiring clarification if the Director is to carry out his responsibilities. Resolution of the coverage question would, of course, allow the Director to give more certain advice to potential claimants regarding their rights under the Act.[14] However, the Director

---

13. The question arose because the FCMHSA incorporated by reference the hearing procedures established in the LHWCA. At the time of the FCMHSA's enactment, the LHWCA did not require qualified administrative law judges as hearing officers but was subsequently amended to do so. Neither the FCMHSA nor the amendments to the LHWCA made clear, however, whether the new requirements for hearing officers in compensation proceedings under the LHWCA also applied in proceedings under the FCMHSA.

14. The Act provides:

The Secretary shall, upon request, provide persons covered by this chapter with infor-

cannot claim to be aggrieved simply because the advice he must give is uncertain. Unlike the cases arising under the FCMHSA, this is not a case in which "no final resolution would leave the administration of [the Act] in a limbo of uncertainty" and not one in which "the Director's interests as administrator . . . are sufficiently bound up with the case at bar that he must be granted standing to appear as petitioner." *Director v. Alabama By-Products Co., supra,* at 717.

## Conclusion

In sum, the Director has shown no interest on his part, either pecuniary or administrative, which is adversely affected by the decision of the Board in this case. Hence, he does not meet the standing requirement imposed by section 921(c) and may not, on his own initiative and without the company of the claimant, petition to review the Board's decision to this court. At bottom, the Director appears here to claim no more than an interest in receiving from the Board an interpretation of the Act's coverage consistent with his belief as to what that coverage should be. The mere fact that the Board has chosen not to accept the Director's view does not aggrieve the Director in any meaningful sense and, hence, cannot give him standing to appeal. We are unable, therefore, under the statute to render the advisory legal opinion which the Director seeks by his petition to this court.

Petition to review is DISMISSED.

mation and assistance relating to the chapter's coverage and compensation and the procedures for obtaining such compensation and including assistance in processing a claim. The Secretary may, upon request, provide persons covered by the chapter with legal assistance in processing a claim. . . .
33 U.S.C. § 939(c)(1).
An argument, derived from this section, that the Director has standing on account of his

duty to assist the claimant is, of course, refuted by the fact that the claimant in this case has dropped entirely from the picture. On account of his failure to file a timely appeal, the claimant is irrevocably bound by the decision of the Board.