**DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Petitioner,**

v.

**ROCHESTER AND PITTSBURGH COAL
COMPANY, Respondent,**

and

**Old Republic Companies, Respondent,**

and

**Pete L. Kislak, Respondent.**

No. 81–2021.

United States Court of Appeals,
Third Circuit.

Submitted by Agreement of Counsel
March 18, 1982.

Decided May 18, 1982.

---

T. Timothy Ryan, Jr., Sol. of Labor, Don-
ald S. Shire, Associate Sol., Cornelius S.

Donoghue, Judith E. Kramer, Co-Counsel for Black Lung Benefits, Virginia C. Smith, Atty., U. S. Dept. of Labor, Washington, D. C., for petitioner.

John L. Kilcullen, Kilcullen, Wilson & Kilcullen, Washington, D. C., for Rochester and Pittsburgh Coal Co. and Old Republic Companies, respondents.

Before ALDISERT, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This petition for review of a decision and order of the Benefits Review Board ("the Board") involves the interpretation of Title IV of the Federal Coal Mine Health and Safety Act of 1969, 83 Stat. 742 (1969), as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150 (1972), 30 U.S.C. § 901 *et seq.* (1976) ("the Act"), but before the Act was amended by the Black Lung Benefits Reform Act of 1977, 92 Stat. 95 (1978). The Board disallowed payment of black lung benefits to the claimant, Pete L. Kislak, for the period between January 1 and March 1, 1974, because Kislak's claim was not filed until March 20 of that year. The Director of the Office of Workers' Compensation, United States Department of Labor ("the Director"), has petitioned for review of this part of the Board's decision disallowing compensation for January and February 1974. We grant the petition.

### I.

Claimant Kislak worked in the coal mining industry for about 45 years before his retirement in 1976. For 36 of these years,

Kislak was employed by the respondent, Rochester and Pittsburgh Coal Company. Beginning in approximately 1971, Kislak experienced difficulties in breathing, and an x-ray taken in October 1973 indicated that he was suffering from complicated pneumoconiosis, commonly known as "black lung" disease. On March 20, 1974, Kislak applied to the Office of Workers' Compensation, United States Department of Labor, for black lung benefits under the Act. His claim was contested by Rochester and Pittsburgh Coal Company who, as his employer, was allegedly liable for payment of benefits under 30 U.S.C. § 932 (1976).

After several administrative proceedings,[1] the administrative law judge concluded that Kislak suffered from complicated pneumoconiosis, basing his decision on the October 1973 x-ray and other medical evidence submitted by the Director. Under 30 U.S.C. § 921(c)(3) (1976), this finding of complicated pneumoconiosis raised an irrebuttable presumption of total disability, entitling Kislak to black lung benefits. The ALJ then awarded benefits to Kislak for the period beginning with January 1974, the earliest date for which benefits are authorized under 30 U.S.C. § 932(e) (1976).

Rochester and Pittsburgh Coal Company appealed this decision to the Benefits Review Board. The Board affirmed the finding of disability but disallowed benefits for the two months prior to March 1974, the month in which Kislak filed his application. The Director petitions for review[2] of this latter portion of the Board's decision.[3]

---

1. After Kislak's claim was filed in March 1974, his application for benefits was considered by a hearing officer on two separate occasions, by an administrative law judge, and twice by the Board. None of the difficulties which required such a lengthy administrative process are involved in this petition for review.

2. We note that the parties are in agreement that the Director has standing to bring this action. In *Krolick Contracting Corp. v. Benefits Rev. Bd.*, 558 F.2d 685 (3d Cir. 1977), we held that "in Black Lung cases, in which the government has a secondary liability in the event an employer does not pay benefits, the Director does have standing to represent the government's interests." *Id.* at 689. Although

in *Krolick* the Director sought standing as a respondent, the same reasoning would generally support his standing as a petitioner. This court has implicitly recognized the Director's standing as a petitioner in *Director, Office of Wkrs.' Compensation v. O'Keefe*, 545 F.2d 337 (3d Cir. 1976), and, more recently, in *Clites v. Jones and Laughlin Steel Corp.*, 663 F.2d 14 (3d Cir. 1981).

In this case, the Director apparently lacks a pecuniary interest in the litigation because no interim benefits were paid to Kislak by the Government for January and February 1974, due to an administrative error. *See* Letter

---

3. See note 3 on page 19.

## II.

The sole issue in this case is what is the earliest date authorized by the Act and its implementing regulations for the payment of benefits to a claimant whose disability arose prior to January 1, 1974, but who did not file his claim until after that date. Our reading of the Act's language and the Department of Labor regulations leads us to the conclusion that such a claimant is entitled to benefits for the period beginning with January 1, 1974.

The Act classifies black lung benefits claims into three categories according to the date when the application for benefits was filed. Part B of the Act covers the first two categories—those claims filed between December 31, 1969, and June 30, 1973, and those filed between July 1 and December 31, 1973. Under Part B, payments to the claimants are made directly by the United States.[4] The Federal Government is shielded from retroactive liability under Part B, as payment of benefits is expressly prohibited for any period prior to the date that the claim was filed. 30 U.S.C. § 924(c) (1976).

Part C of the Act covers claims filed after December 31, 1973, such as the claim involved here. This part makes the responsible coal mine operator liable for the payment of benefits, unless the state workers' compensation law provides adequate coverage as defined in 30 U.S.C. § 931(b) (1976).[5]

Part C provides for payment of benefits from the date of disability by incorporating the disability period provisions of the Longshoremen's and Harbor Workers' Compensation Act, as follows:

"(a) No compensation shall be allowed for the first three days of the disability . . . : *Provided, however,* That in case the injury results in disability of more than fourteen days the compensation shall be allowed from the date of the disability."

33 U.S.C. § 906(a) (1976), incorporated by 30 U.S.C. § 932(a) (1976).

Unlike Part B, which prohibits the payment of benefits for periods before a claim is filed, Part C prohibits the payment of benefits for periods before a specific date, January 1, 1974. This limitation of the coal mine operators' liability for retroactive benefits is found in 30 U.S.C. § 932(e) (1976), which provides:

"(e) No payment of benefits shall be required under this section:

(1) except pursuant to a claim filed therefor in such manner, in such form, and containing such information, as the Secretary shall by regulation prescribe;

(2) *for any period prior to January 1, 1974* ; or

(3) for any period after twelve years after December 30, 1969."

(Emphasis added.)

We read these provisions as generally providing benefits from the date of disabili-

---

Brief of Petitioner, March 22, 1982. Nevertheless, we concur in the Director's view that he has standing because of his responsibility to ensure the proper enforcement and lawful administration of the black lung benefits program. *See Director, Office of Wkrs.' v. Eastern Coal Corp.*, 561 F.2d 632 (6th Cir. 1977); *Director, etc. v. Alabama By-Prods. Co.*, 560 F.2d 710 (5th Cir. 1977).

**3.** Rochester and Pittsburgh Coal Company also petitioned for review of that portion of the Board's decision upholding the administrative law judge's finding that Kislak was suffering from complicated pneumoconiosis. This court affirmed that part of the Board's decision by judgment order, *Rochester and Pittsburgh Coal Company v. Director, Office of Workers' Compensation Programs*, 681 F.2d 808 (3d Cir. 1982).

**4.** For those claims filed between July 1 and December 31, 1973, responsibility for the payment of benefits passed from the Federal Government to the coal operators on January 1, 1974. *See* 30 U.S.C. § 925 (1976).

**5.** *See* S.Rep.No.92–743, 92d Cong., 2d Sess., *reprinted in* [1972] *U.S.Code Cong. & Ad.News* 2305, 2323–25. The Senate Committee explained that this sharing of responsibility between the Federal Government and the coal industry would enable the Federal Government to provide for the backlog of cases, and leave to the coal industry all future claims for benefits.

ty for miners who filed claims after December 31, 1973. The only limitation on retroactive benefits is that imposed by the January 1, 1974, cut-off found in § 932(e).

The Department of Labor's implementing regulations support this reading of the statute. The section entitled "Date from which benefits shall be payable" provides:

> "(a) Section 6(a) of the Longshoremen's Act as incorporated by section 422 of Part C of Title IV of the Act requires that in the case of total disability benefits shall be payable to eligible beneficiaries beginning with the month of the onset of such total disability and in the case of death, benefits shall be payable to eligible beneficiaries beginning with the month of such death. In no event shall benefit payments be required under this part for any period prior to January 1, 1974."

20 C.F.R. § 725.503(a) (1977).

### III.

In reaching its decision to deny benefits for any period before Kislak's claim was filed, the Board relied on its earlier decision in *Zimmerman v. Glen Nan, Inc.*, 11 B.R. B.S. 248, 2 B.L.R. 674 (1979). In that case, the claimant was disabled in February 1974 and his application for benefits was filed in March 1974. In modifying the hearing officer's award of benefits beginning with February 1974, the Board stated that benefits were only payable for a period starting with the month of application, March 1974.

The Board in *Zimmerman* based its decision on the regulation at 20 C.F.R. § 725.502(b) (1977), which states in full:

> "(b) Benefits are payable for monthly periods. If the claimant meets all the requirements for entitlement to benefits in the same month in which his claim is filed, the filing will be effective for the whole month. If a claimant dies in the first month for which he meets all the requirements for entitlement to benefits, he will be considered to be entitled to benefits for that month."

The Board interpreted 20 C.F.R. § 725.502(b) as requiring that an application be filed before the claimant is "entitled" to benefits and that benefits may not be paid for any period prior to the month in which the claimant first became "entitled" to them.

On the facts in this record, we reject this interpretation of 20 C.F.R. § 725.502(b) as inconsistent with the statute and other implementing regulations. To read the statute as requiring payment of benefits only from the month the claim was filed would render 30 U.S.C. § 932(e) superfluous. Part C already applies only to claims filed after December 31, 1973. If no benefits could be paid for periods before the date the claim was filed, then there would be no need to specify that "[n]o payment of benefits shall be required under this section . . . for any period prior to January 1, 1974." 30 U.S.C. § 932(e) (1976). The only logical way to interpret the provisions of Part C, then, is to read them as allowing payment of benefits for claims filed after December 31, 1973 for periods beginning at the date of disability or January 1, 1974, whichever is later. Furthermore, the Board's interpretation of 20 C.F.R. § 725.502(b) conflicts with the provisions of 20 C.F.R. § 725.503(a), quoted above, which ignore the date of filing in its statement of the "Date from which benefits shall be payable."[6]

Read in the context of 20 C.F.R. § 725.503(a), which explicitly governs the date from which benefits are payable, the regulation at 20 C.F.R. § 725.502(b), relied upon

---

**6.** Additional support for our conclusion that the date the claim is filed is not a crucial date in determining the period for which benefits are payable is found in the regulation at 20 C.F.R. § 725.503(d) (1977):

> "(d) In light of the fact that it may not be possible in certain instances to determine the date upon which a miner became totally disabled due to pneumoconiosis, the adjudication officer charged with the responsibility

for determining such miner's claim may, in the absence of evidence to the contrary and under appropriate circumstances, determine that such miner's total disability due to pneumoconiosis began on the date such miner's claim was filed."

If benefits could never be paid for the period before the claim was filed, as the Board concluded in *Zimmerman* and here, this regulation would have been unnecessary.

by the Board, merely defines the smallest unit of time (a month) for which benefits are payable. Any period of time less than a month is treated as a full month under 20 C.F.R. § 725.502(b), so that if a claimant is entitled to benefits for part of a month, he is entitled to benefits for the whole month.[7]

### IV.

We conclude that for claims filed after December 31, 1973, black lung benefits are payable under the Act from the date of disability or January 1, 1974, whichever is later. The regulation erroneously relied upon by the Board merely expands coverage from the date of disability to the first day of the month of disability, when that date falls after January 1, 1974.

We will reverse the decision and order of the Board insofar as it modifies the ALJ's decision awarding benefits from January 1, 1974, and we will order the reinstatement of the ALJ's award of benefits.[8]

7. The respondents argue in their brief that the Board's decision should be affirmed so as to treat consistently those cases decided under the old regulations implementing the Act after the 1972 amendments and those cases decided under the new regulations implementing the Act after its amendment by the Black Lung Benefits Reform Act of 1977. Although the relevant provisions of the statute have not been amended, respondents argue that the new regulations require that benefits be paid only for the period after the claim was filed, citing 20 C.F.R. §§ 725.202(b), 725.203(a), and 725.502(b) (1980).

Despite any doubts we may have concerning the respondents' interpretation of the new regulations, see 20 C.F.R. § 725.503(b), (e) (1981), we need not reach that issue. Both parties concur in concluding that the old regulations relied upon by the administrative law judge and the Board control the disposition of this appeal. Cf. Yakim v. Califano, 587 F.2d 149 (3d Cir.

1978) (the 1972 Act applies to cases filed in the courts before the effective date of the Benefits Reform Act of 1977, regardless of the date when the court disposes of the case).

8. The ALJ's order of October 10, 1979, directing payment to claimant of all monetary benefits to which he is entitled "commencing as of January 1, 1974" is reproduced at A. 18. The conclusion of the ALJ on which that order is based is stated as follows at A. 17:

"... I conclude that Claimant is totally disabled due to pneumoconiosis which arose out of his coal mine employment; that he has been so disabled since October 25, 1973, the date on which his complicated pneumoconiosis was revealed by x-ray; that he is entitled to benefits, augmented during the dependency of his wife and son, from January 1, 1974; and that Employer is liable for all benefits due Claimant."