INGALLS SHIPBUILDING DIVISION, LITTON SYSTEMS, INC., Petitioner,

v.

John H. WHITE and Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.

No. 80–4002.

United States Court of Appeals, Fifth Circuit.

July 26, 1982.

Paul M. Franke, Jr., Gulfport, Miss., John H. Carlson, Pascagoula, Miss., for petitioner.

Roy Axelrod, San Francisco, Cal., for amicus curiae Bethlehem Steel Corp. et al.

Mark C. Walters, Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C., for Director, Office of Workers Compensation Programs.

Roland Skinner, Biloxi, Miss., for White.

Before CLARK, Chief Judge, THORN-BERRY and GARZA, Circuit Judges.

THORNBERRY, Circuit Judge:

The Director of the Office of Workers' Compensation Programs, Department of Labor, asks this court to decide whether administrative law judges have the power to approve compromise settlements under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. The Director argues that the power to approve settlements under the LHWCA lies solely in the offices of the deputy commissioner and the Secretary. Appellant Ingalls Shipbuilding Division, Litton Systems, Inc., and Bethlehem Steel Corp. and Triple A Shipyards as amicus insist that administrative law judges share this authority. Ingalls urges in addition that the Director lacks standing either to appeal the approved compromise settlement to the Benefits Review Board or to appear before this court as an appellee defending the Board's order.

This dispute began with an event that appears far removed from the issues in this appeal. The LHWCA claimant, John W. White, was injured on February 17, 1977, in the course of his employment as a shipfitter for Ingalls Shipbuilding, when a 350-pound pressing ram crushed his right hand. After receiving compensation for temporary total disability, White sought relief under the LHWCA for any permanent injury he had sustained. His claim could not be resolved in the deputy commissioner's office because the parties could not agree on the extent of injury. The deputy commissioner, therefore, referred the claim to an administra-tive law judge (ALJ) for a formal hearing as permitted under 33 U.S.C. § 919.

Before a hearing could be held, however, on January 11, 1979, the parties informed the ALJ that they had agreed to a compromise settlement under 33 U.S.C. § 908(i)(A). The settlement was based on a medical report by Dr. L. Conrad Rowe, who found that White was suffering from a 25% permanent partial disability of the right hand, but that he could continue to work if he refrained from lifting heavy objects. Under the terms of the settlement, Ingalls agreed to pay White $25,000, on the condition that it did not have to rehire him, and to pay all medical bills related to his injury. It also promised to pay White's attorney $2,300. The ALJ did not remand the case to the deputy commissioner to obtain his approval of the settlement terms. Instead, he issued an Order Approving Settlement on January 30, 1979. The order stated that the settlement was "in the best interests of Claimant" and "in accord with *Clefstad v. Perini North River Associates,* 9 BRBS 217, BRB No. 77–584 (1978)." The judge's reference to *Clefstad* is a crucial part of any order approving settlement. In this instance, however, it proved to be insufficient to sustain the order.

Upholding the authority of administrative law judges to approve settlements, the Benefits Review Board held in *Clefstad* that before he approves a proposed settlement, an ALJ must consider the claimant's age, education, work history, medical condition, and the availability of the type of work that the claimant is able to perform. 9 BRBS at 222. While the ALJ below cited *Clefstad,* he did not discuss the evidence underlying each *Clefstad* factor. This failure to follow *Clefstad* to the letter as well as fear that the $25,000 lump sum settlement would be inadequate to compensate the claimant for his injuries prompted the Director to appeal the order to the Benefits Review Board under 33 U.S.C. § 921(b)(3).

With the advantage of full briefing and oral argument, the Board rejected appellant's contention that the Director lacked standing to appeal the ALJ's order. It

found that Congress intended the standing requirement to appear before the Board to be satisfied more easily than the standing criteria for appearance in federal court. In fact, the Board held that the Director had "automatic" standing "in any case before the Board." Thus able to reach the merits of the ALJ's order approving settlement, the Board found the ALJ's treatment of *Clefstad* to be inadequate and remanded the order for "a complete rationale according to the guidelines set forth in *Clefstad.*" Ingalls then appealed to this court under 33 U.S.C. § 921(c).

## I. JURISDICTION

■ Section 921(c) of the LHWCA provides that "[a]ny party adversely affected or aggrieved by a *final order* of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred...." 33 U.S.C. § 921(c) (emphasis supplied). Although none of the parties has raised the issue of whether the Board's action in this case constitutes a "final order," it is our threshold duty to determine whether we have subject-matter jurisdiction of this petition for review. Accordingly, we must inquire whether Ingalls' petition for review from a remand order of the Benefits Review Board is final under § 921(c).

■ The "final order" requirement of § 921(c) furthers the same policies as the finality rule embodied in 28 U.S.C. § 1291 (1976). Thus, finality under both statutes holds the same meaning. *Director, Office of Workers' Compensation Programs v. Brodka,* 643 F.2d 159, 161 (3d Cir. 1981). It is a well-established rule of appellate jurisdiction that a remand order to an administrative agency is ordinarily not treated as a final order. *National Steel & Shipbuilding Co. v. Director, Office of Workers' Compensation Programs,* 626 F.2d 106, 108 (9th Cir. 1980).[1] This circuit has followed the rule of

other circuits in holding that this general rule mandates dismissal of a petition for review from a remand order of the Benefits Review Board if the court finds that the Board's decision is not a final order. *United Fruit Co. v. Director, Office of Workers' Compensation Programs,* 546 F.2d 1224, 1225 (5th Cir. 1977).[2]

Like every rule, however, this principle of appellate jurisdiction has exceptions. *National Steel & Shipbuilding Co., supra,* 626 F.2d at 108. We hold that the appeal in this case falls within the exception to the final judgment rule as stated in *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–54, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964). In *Gillespie,* the administratrix of the estate of her son, Daniel, brought actions against the vessel owner-employer to recover damages for Daniel's death for herself and on behalf of Daniel's brother and sisters under the Jones Act and the Ohio wrongful death statute. The vessel owner moved to dismiss all reference to the laws of Ohio and the claims of Daniel's brother and sisters. The trial court granted the motion. Gillespie appealed for herself, joined by the brother and sisters. The vessel owner moved to dismiss the appeal on the ground that the rulings appealed from were not "final" decisions under 28 U.S.C. § 1291. The Sixth Circuit reached the merits of the controversy without deciding the question of appealability. The Supreme Court reversed on the merits, but held that the decision of the trial court was "final" for purposes of § 1291.

The Court recognized that the question of finality was frequently so close that "it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality." 379 U.S. at 152, 85 S.Ct. at 311. The requirement of finality, therefore, "is to be given a 'practical rather than a technical

---

1. Similarly, a state supreme court decision remanding to a lower court is not a "final decision" under 28 U.S.C. § 1257. *O'Dell v. Espinoza,* —— U.S. ——, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).

2. In *United Fruit Co.,* we dismissed the appeal as premature because the appellant had petitioned from an order of the Board remanding the case to the ALJ for a finding on the extent of the claimant's liability. 546 F.2d at 1225.

construction.'" *Id., quoting from Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). This practical assessment involves two competing considerations: "'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* at 152–53, 85 S.Ct. at 311. Finding that the eventual costs would be less if it reached the merits and that to do otherwise would unnecessarily delay recovery, the Supreme Court held that a practical interpretation of § 1291 justified its maintaining jurisdiction of the appeal.[3]

We conclude that a decision on the merits of this appeal does not raise the spector of piecemeal review before the court. The only issue presented that is directly related to the remand order is whether the ALJ made the appropriate findings in his original order approving settlement. The remaining issues, which involve the standing of the Director and the authority of the ALJ to approve lump-sum settlements, are purely matters of law and are "final" in that they have been litigated and decided by the Benefits Review Board. The question of whether the ALJ's order approving settlement conformed with *Clefstad* does not undermine finality in this instance for the following reasons.

If we were to dismiss for lack of jurisdiction to allow the ALJ to reconsider the settlement and if we were to find on a later appeal that the ALJ lacked authority to approve lump-sum settlements, a dismissal at this stage in the proceedings would be entirely purposeless, for the ALJ's power to reconsider the settlement depends completely on our interpretation of the relevant enabling statute. This result would create much greater "cost and inconvenience" than would an immediate decision on the merits. Moreover, a dismissal with the threat of reversal on future appeal ultimately could work a harsh injustice on the claimant, since the delay caused by dismiss-al could put him that much further off from the recovery to which he unquestionably is entitled. Failure to dismiss, by contrast, poses no similar potential for prejudice to Ingalls.

*Wescott v. Impresas Armadoras, S. A. Panama,* 564 F.2d 875, 881 (9th Cir. 1977), supports our consideration of these consequences. Wescott sued Impresas for injuries he sustained while working as a longshoreman employed by Brady Hamilton Stevedore Company aboard a ship owned by Impresas. Brady intervened to deny its negligence and to recover against Impresas any monies paid to Wescott for workmen's compensation. The jury decided the special issues in favor of the longshoreman, and the district court denied Impresas' motion for judgment notwithstanding the verdict. In denying the motion, the district judge did not address the intervening employer's counterclaim against Impresas. Applying the "practical" test of *Gillespie,* the Ninth Circuit refused to dismiss the appeal to permit the district court to resolve the dispute as to the intervenor's rights against Impresas for two reasons, both of which are compelling in the instant appeal. First, the intervenor's rights turned solely on matters of law. *See also Lockwood v. Wolf Corp.,* 629 F.2d 603, 608 n.3 (9th Cir. 1980); *Aetna Life Insurance Co. v. Harris,* 578 F.2d 52, 54 n.1 (3d Cir. 1978). Second, the court recognized that if it held that the district court should have granted the motion for judgment notwithstanding the jury verdict, then a dismissal to the trial court would be futile because the intervenor's rights were dependent on a judgment in favor of the plaintiff—just as the ALJ's authority in this case is dependent on a decision in favor of Ingalls.

Upon balancing the competing considerations above, we find that the facts here fall within the unique situation that is established as an exception to technical finality in *Gillespie. See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 478 n.30, 98 S.Ct.

---

**3.** For recent decisions discussing *Gillespie, see Weil v. Investment Indicators Research & Management,* 647 F.2d 18, 27 (9th Cir. 1981); *Unit-ed States v. Mississippi Power & Light Co.,* 638 F.2d 899, 903 (5th Cir. 1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 387, 70 L.Ed.2d 206 (1981).

2454, 2462 n.30, 57 L.Ed.2d 351 (1978). We, therefore, hold that the decision of the Benefits Review Board is a final order within the meaning of § 921(c), and that we may properly entertain jurisdiction of the appeal.

## II. ORDER APPROVING SETTLEMENT

■ Appellant contends at the outset that the ALJ's order approving settlement is analogous to a consent decree and that the Director, therefore, cannot appeal to the Benefits Review Board in the absence of proof that would nullify the parties' consent. Appellant cites no law to justify this conclusion, and we find it both unpersuasive and erroneous.

Though there is no authority specifically addressing the reviewability of an order approving settlement of a LHWCA claim, there is instructive precedent on the reviewability of consent decrees in other contexts. *See United States v. City of Miami,* 664 F.2d 435, 441 nn. 10–13 (5th Cir. 1981) (en banc), where the court discusses the responsibilities of district and appellate courts in assessing settlements of class actions, stockholders' derivative suits, and compromises of claims in bankruptcy. It is clear that when the district judge is required by law to ascertain specific facts before approving a settlement, the appellate court will examine that determination to ensure that it is "fair, adequate and reasonable." Contrary to appellant's assertions, review is not limited to ascertaining whether consent is valid or whether the district judge abused his discretion: "[T]he degree of appellate scrutiny must depend on a variety of factors, such as the familiarity of the trial court with the lawsuit, the stage of the proceeding at which the settlement is approved, and the type of issues involved. *United States v. City of Alexandria,* 614 F.2d 1358, 1361 (5th Cir. 1980).

Thus, even if we accept Ingalls' contention that an order approving settlement is like a consent decree, we find that an ALJ, in approving the settlement of a LHWCA claim, is limited in the same manner as a district judge approving a compromise in a class action or stockholders' derivative suit. Though the criteria for approval are different, the purpose of approval is the same—to protect the interests of the parties within constitutional and statutory strictures and to ensure that the decree is consistent with the public policy objectives sought to be attained by Congress in enacting the statutory right of action. *City of Miami, supra,* 664 F.2d at 441. The ALJ in examining a proposed settlement of longshoreman's claim is required to consider specific facts that help determine the size of award that the claimant deserves. *Clefstad, supra,* 9 BRBS at 222. The Benefits Review Board, like any appellate court, plays an indispensable role in overseeing settlement approval just as it did in this case: if review was precluded, there would be no check on ALJ approval, a result that could frustrate Congress' intent in passing the LHWCA. The likelihood of frustrating legislative intent appears even greater in a case such as this one, where the power of the ALJ to approve agreed settlements in the first instance is at issue. Thus, even if we treat the ALJ's order approving settlement like a consent decree, as appellant bids us, we find ample support in law and logic for holding that it is reviewable.

## III. DIRECTOR'S STANDING TO APPEAL

As this court explained in *Director, Office of Workers' Compensation Programs v. Donzi Marine, Inc.,* 586 F.2d 377, 378 (5th Cir. 1978), the 1972 amendments to the LHWCA provide a two-step process for review of any compensation order entered under the Act by a duly appointed hearing officer. 33 U.S.C. § 921 (1976). Under section 921(b), "any party in interest" may appeal the decision of the hearing officer to the Benefits Review Board. Subsequently, "any person adversely affected or aggrieved by a final order of the Board" may appeal that order to the United States court of appeals for the circuit in which the injury occurred. 33 U.S.C. § 921(c). Ingalls argues that the Director is neither a "party in interest" nor a "person adversely affect-

ed or aggrieved," and that therefore, the Director has no standing either to petition the Benefits Review Board or to act as respondent in this appeal. We examine each of these contentions in turn.

A. The Director's Standing to Respond to Proceedings Brought Under § 921(c)

■ First, we must dispose of Ingall's argument that the Director lacks standing to respond in this court. Ingalls relies for the strength of its argument on a line of cases that deny the Director standing as a petitioner under § 921(c) because he is not a "person adversely affected or aggrieved." *See Director, Office Workers' Compensation Programs v. Bethlehem Steel Corp.*, 620 F.2d 60 (5th Cir. 1980); *Fusco v. Perini North River Associates*, 601 F.2d 659, 670 (2d Cir. 1979), *vacated on other grounds*, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980), *on remand* 622 F.2d 1111, *aff'd*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981); *Donzi Marine, supra*, 586 F.2d at 382; *I.T.O. Corporation of Baltimore v. Benefits Review Board*, 542 F.2d 903, 909 (4th Cir. 1976), *vacated sub nom. Adkins v. I.T.O. Corp. of Baltimore*, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088, *rev'd on remand on other grounds*, 563 F.2d 646, 648 (1977). Apart from *I.T.O.*, these cases do not address the question of when the Di-

rector may appear as a respondent, and therefore, they are distinguishable from the Director's position here. Upon examining *I.T.O.* and the other decisions addressing the issue of when the Director may appear as a respondent in a federal court of appeals, *see Shahady v. Atlas Tile & Marble Co.*, 673 F.2d 479 (D.C.Cir.1982); *Prolerized New England Co. v. Benefits Review Board*, 637 F.2d 30 (1st Cir. 1980), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3080, 69 L.Ed.2d 952 (1981); *United Brands Co. v. Melson*, 569 F.2d 214 (5th Cir. 1978) (single judge order); *Krolick Contracting Corp. v. Benefits Review Board*, 558 F.2d 685, 689–90 (3d Cir. 1977); *Nacirema Operating Co., Inc. v. Benefits Review Board*, 538 F.2d 73, 75 (3d Cir. 1976); *Offshore Food Services, Inc. v. Benefits Review Board*, 524 F.2d 967 (5th Cir. 1975); *McCord v. Benefits Review Board*, 514 F.2d 198, 200–01 (D.C.Cir.1975), we hold that the Director is a proper party before this court.[4]

While this Court has recognized previously that the Director must establish some pecuniary or administrative interest to petition the court of appeals for review under 33 U.S.C. § 921(c), *Bethlehem Steel Corp., supra*, 620 F.2d at 60, and *Donzi, supra*, 586 F.2d at 382, no panel in this Circuit has discussed the issue of when the Director could appear as a respondent.[5] We, there-

---

4. The Supreme Court has expressly declined to rule on this issue: "Petitioners named the Director rather than the BRB as a respondent in the Court of Appeals and neither party has raised any question in this Court concerning the identity of the federal respondent. This question is therefore not before us." *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 256 n.11, 97 S.Ct. 2348, 2353, 53 L.Ed.2d 320 (1977).

5. The issue has been raised in this Circuit, but no panel has provided a rationale by which to decide the question. In *Jacksonville Shipyards, Inc. v. Perdue*, 539 F.2d 533, 546 (5th Cir. 1976), *vacated sub nom on other grounds*, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977), *on remand*, 575 F.2d 79 (5th Cir. 1978), *aff'd*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979), the court allowed the Director to respond because a prior panel in the same case granted the Director's motion to be added as a respondent. The latter decision apparently was unpublished. Neither of the panel opin-

ions discuss the appropriate standard for allowing standing to respond, and the unique procedural facts of the case have been construed to diminish its precedential value. *See Director, Office Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310, 333–34 (7th Cir. 1977).

In *Offshore Food Service, supra*, 524 F.2d at 967, this Court in a per curiam decision granted a motion by the Benefits Review Board to dismiss it as a party respondent under § 921(c). The court relied on cases granting similar motions by the Board on the ground that the Board was not a necessary party to the appeal. Since there is no analysis of the question in *Offshore Food Service*, it is impossible to discern the specific basis for the court's decision. Furthermore, the Director rather than the Board is seeking to respond in the instant case. The decision, therefore, does not eliminate the problem before us. By contrast, Judge Roney in *United Brands Co. v. Melson, supra*, 569 F.2d at 215, examines the issue at length, but his

fore, must cut through the bramble of conflicting legal doctrines and determine the appropriate rule for this Circuit. *Compare I.T.O., supra,* 542 F.2d at 909, with *Shahady, supra,* 673 F.2d at 481–84.

We have discovered three possible grounds for decision. First, we could require the Director to demonstrate some injury in fact, economic or otherwise, to justify his standing as respondent in § 921(c) proceedings, just as we did when the Director sought to petition this Court for review in *Donzi, supra.* Second, we could rely on the broad language of Fed.R.App.P. 15(a), which requires a petitioner for review of an agency order to name the agency as a respondent. Finally, we could consider the statutory scheme of the LHWCA and regulations promulgated thereunder as the D.C. Circuit did in *Shahady, supra,* 673 F.2d at 481–83. For the following reasons, we rely on Rule 15(a).

Ingalls urges us to adopt the first approach, which has been articulated most strongly by judges in the Fourth Circuit. In *I.T.O.,* a divided en banc panel held that the Director was required to show a stake in the outcome of the controversy in order to respond to a petition for review under § 921(c). *I.T.O., supra,* 542 F.2d at 907. To reach this conclusion, the court relied solely on the language of the section itself: "Since the Act is not specific, it follows that, if the Director is to be named a party, he must be 'adversely affected or aggrieved by a final order of the Board' within the meaning of § 921(c)." *Id.* The court made no distinction between respondents and petitioners and did not discuss Rule 15(a). Applying § 921(c), the court engaged in the traditional inquiry of whether the Director had suffered an "injury in fact." The court found that the Director's general duty to assist claimants and provide them legal assistance did not give him a sufficient stake in the outcome to permit him to respond as a matter of right. It admitted, however, that the Director could seek permissive intervention under Fed.R.Civ.P. 24(b), and that his application ordinarily would be granted. The court did not apply Rule 24(b) to the case before it because the Director had made no motion under the Rule.[6]

We do not follow the Fourth Circuit. If the Director has standing to petition the Review Board under § 921(b)(3), an issue that we will examine subsequently, then he should have the right to appear in this court to defend a decision by the Board in his favor. The absence of any contrary language in § 921(c), or elsewhere in the LHWCA, referring to the agency's capacity to respond suggests to us, not that the Director should be included in the "adversely affected or aggrieved" requirement that governs who may petition for review, but that his standing to respond is governed by other rules.

Rule 15(a) of the Federal Rules of Appellate Procedure provides the method for obtaining review of an order of an administrative agency in the court of appeals: "The petition shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed.... In each case, the agency shall be named respondent." "Agency" as defined in the rule includes "agency, board, commission or officer." Rule 15(a) is generally applicable to statutory review proceedings within this Court's original jurisdiction. This Court has such jurisdiction under § 921(c). Prior to 1972, § 921(c) identified the "deputy commissioner making the order" as a respondent. The amended version

---

opinion is a single judge order, and as such, it lacks the precedential weight of a panel decision. We have concluded, in view of these decisions, that the issue merits full examination.

**6.** The Fourth Circuit recently applied its analysis in *I.T.O.* to allow the Director to respond under § 921(c). In *Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.,* 676 F.2d 110, 113 (4th Cir. 1982), the Director petitioned for review of the Board's finding that an employee qualified for compensation from a special fund established in 33 U.S.C. § 908. Because the Director is charged with administering the special fund, and protecting it from unjustified claims, the court held that he had "more of a direct interest than the Director did in *I.T.O. Corp.*" *Id.* at 113. *But see Shahady v. Atlas Tile & Marble Co., supra,* 673 F.2d at 483.

of § 921(c) is silent as to who shall appear as respondent for the agency, but the Secretary has filled that gap by promulgating 20 CFR § 802.410(b), which names the Director to represent the Department of Labor in review proceedings. Thus, it appears that the rule requires Ingalls to name the Director as respondent in its petition.

Despite the blunt, and seemingly mandatory requirement of Rule 15(a), however, the courts have created an exception to its applicability in cases where the private parties seeking review of an agency proceeding are sufficiently adverse. As the D.C. Circuit explained in *McCord, supra*: "Normally, a single private party is contesting the action of an agency, which [the] agency must appear and defend on the merits to insure the proper adversarial clash requisite to a 'case or controversy.' . . . Here there is sufficient adversity between McCord and Mrs. Cepthas (the claimant) to insure proper litigation without participation by the Board." 514 F.2d at 200. The court concluded that the rationale of Rule 15(a) does not apply in this circumstance. We do not consider here the wisdom of adopting this judicial exception as a precedential rule in this Circuit because we are not faced with the question. Adversity clearly exists between Ingalls and the Director for there would be no respondent without the presence of the agency. Rather, we need only decide whether Rule 15(a) is generally applicable to review proceedings under § 921(c).

The D.C. Circuit recently has avoided reliance on Rule 15(a) when faced with the issue. *Shahady, supra*, 673 F.2d at 484. It held in *Shahady* that "the Director, OWCP shall be named as federal party-respondent in all petitions for review brought under section 21(c) of the LHWCA, 33 U.S.C. § 921(c)." *Id.* at 485. The Court relied on the "Director's central role in the legislative and regulatory scheme" created by the LHWCA. It declined to rest its decision on Rule 15(a) primarily because it believed that the rule applies only to a proceeding where the agency respondent appears to defend the commission or board decision as the legal representative of the agency. 673 F.2d at 484. It reasoned that because the Director can disagree with the Board's decision, as he has in this case, he is not the "agency" interest referred to in Rule 15(a). We do not agree with the D.C. Circuit's construction of Rule 15(a). While it may provide a sound basis for allowing the agency to withdraw from a petition for review when it seeks to do so, it does not apply to a proceeding in which the Director demands to appear as a respondent. We find no language in the comments to rule 15(a), in the cases construing it, or in the major treatises to mandate this restrictive interpretation of the Rule. Certainly, under some statutory schemes the agency will be the only party in opposition to the claimant, particularly when the claimant is seeking benefits from the government instead of his employer. When the agency participates as a respondent in these types of proceedings, it represents the agency position in a typical adversarial posture. The LHWCA, admittedly, does not envision a procedural scheme of this nature, but this distinction does not render the plain language of Rule 15(a) inapplicable.

First, the broad language of Rule 15(a)[7] suggests an intent to encompass a wide

7. Rule 15(a) provides in entirety:
(a) Petition for Review of Order; Joint Petition. Review of an order of an administrative agency, board, commission or officer (hereinafter, the term "agency" shall include agency, board, commission or officer) shall be obtained by filing with the clerk of a court of appeals which is authorized to review such order, within the time prescribed by law, a petition to enjoin, set aside, suspend, modify or otherwise review, or a notice of appeal, whichever form is indicated by the applicable statute (hereinafter, the term "petition for review" shall include a petition to enjoin, set aside, suspend, modify or otherwise review, or a notice of appeal). The petition shall specify the parties seeking review and shall designate the respondent and the order or part thereof to be reviewed. Form 3 in the Appendix of Forms is a suggested form of a petition for review. In each case the agency shall be named respondent. The United States shall also be deemed a respondent if so required by statute, even though not so designated in the petition. If two or more persons are entitled to petition the same

variety of agency proceedings. It also indicates a recognition that the agency would not be the only respondent in a petition for review of an agency order. This would account for the potential "three party case" that may arise under the LHWCA, in which the claimant, his employer, and the Director participate. The only express limitation on the applicability of Rule 15(a) is found in Fed.R.App.P. 1(b), which provides that the rules cannot be construed to extend or limit the jurisdiction of the courts of appeals. Allowing the Director to respond to a petition for review in proceedings under § 921(c) does not cross the bounds of this restriction.

Second, the review procedures established by the 1972 Amendments to the LHWCA and the regulations promulgated thereunder suggest that Rule 15(a) applies to proceedings under § 921(c). As the Third Circuit in *Krolick* recognized, the failure of the Act to name a respondent is instructive:

> The reference to a specific agency respondent in the pre-1972 version of 33 U.S.C. § 921(b) was included prior to the adoption of the Federal Rules of Appellate Procedure. Perhaps although no clear legislative history on the subject has been called to our attention, the omission of a reference to the proper respondent when § 921(b) was amended in 1972 was a conscious recognition of the more general reference in Rule 15(a).

*Krolick, supra,* 558 F.2d at 689–90.[8] Furthermore, the Director is unmistakably the entity within the agency who "represents" the agency. The Director is the administrator of the Act, and he therefore bears the responsibility of ensuring its fair and consistent operation.[9] The Secretary has provided specifically that: "The Director, OWCP as designee of the Secretary of Labor responsible for the administration and enforcement of the [Act], shall be deemed to be the proper party on behalf of the Secretary of Labor in all review proceedings conducted pursuant to section 21(c) of the LHWCA." 20 C.F.R. § 802.410(b).

The broad language of Rule 15(a) must be applied with a common sense regard for the variety of agency proceedings that produce appealable administrative orders. When a party decides to petition for review of an agency's order, it generally should name as respondent under Rule 15(a) that entity within the agency that the agency head has designated to respond on behalf of the agency. We conclude, then, reading Rule 15(a) together with the LHWCA and the regulations promulgated thereunder, that the Director is the agency-respondent within the contemplation of Rule 15(a), and that therefore, he is entitled to respond in this Court over Ingall's objection.

### B. The Director's Standing to Petition the Benefits Review Board

■ Having decided that the Director is a proper party respondent in this appeal, we now must turn to the issue of whether the Director was entitled to petition the Board for review of the ALJ's order approving settlement as a "party in interest" under 33 U.S.C. § 921(b)(3). The Board found that the Director had automatic standing under 20 C.F.R. § 802.201(a), which defines "party" or "party in interest" to mean "The Secretary or his designee and any person or business entity directly affected by the decision or order from which an appeal to the Board is taken." Though this Circuit has recognized the Director's right to seek review automatically in dicta, it has not faced squarely the contention that Congress never intended the Director to appear before the Board in a case where the claimant and employer agree. *Donzi, supra,* 586 F.2d at

---

court for review of the same order and their interests are such as to make joinder practicable, they may file a joint petition for review and may thereafter proceed as a single petitioner.

**8.** Prior to 1972, there was no subsection c to § 921. The "§ 921(b)" referred to in *Krolick* set out the procedure for appeal prior to 1972

which was replaced in 1972 by 33 U.S.C. § 921(c).

**9.** Congress has charged the Secretary with the duty to administer the Act, 33 U.S.C. § 939, but the Secretary has delegated that duty to the Director, 20 C.F.R. § 701.201.

378 n.5. We hold today that the Director is a "party in interest" under § 921(b)(3) as defined in 20 C.F.R. § 802.201(a), and therefore, that he was entitled to petition the Benefits Review Board for review of the order approving settlement of White's claim.

Ingalls asks this Court to apply the analysis of *Donzi* to this question of administrative standing. Again, we point out that *Donzi* was limited to the issue of whether the Director had judicial standing to petition this Court for review under § 921(c). *Donzi* would control standing under § 921(b)(3) only if this Court found that § 921(c) and § 921(b)(3) designate the same class of persons as parties. We reject Ingalls' proposed rationale for several reasons.

First, and fundamentally, administrative proceedings before the Benefits Review Board are not Article III proceedings to which either the "case or controversy" or prudential standing requirements apply. *See American Trucking Associations, Inc. v. ICC*, 673 F.2d 82, 85 n.4 (5th Cir. 1982). Within their legislative mandates, agencies are free to hear actions brought by parties who might be without standing if the same issues happened to be before a federal court. *Ecee, Inc. v. Federal Energy Regulatory Commission*, 645 F.2d 339, 349 (5th Cir. 1981). In fact, Congress in its discretion can require that any person be admitted to administrative proceedings whether or not that person has alleged an "injury in fact." *Koniag, Inc., UYAK v. Andrus*, 580 F.2d 601, 612 (D.C.Cir.1978) (Bazelon, J. concurring), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978). Moreover, cases construing § 921(c) have indicated that an "aggrieved party" under that subsection is not a "party in interest" under § 921(b)(3). *Donzi, supra,* 586 F.2d at 378 n.5; *I.T.O., supra*, 542 F.2d at 908. The imposition of less restrictive standing requirements on administrative adjudicatory bodies simply recognizes that they often act as "legislative courts," and as such, they demand a wider discretion than Article III courts to determine who may appear before them. *See Gardner v. FCC*, 530 F.2d 1086, 1090 (D.C.Cir.1976).

Second, by using two distinct phrases—"parties in interest" and "persons adversely affected or aggrieved"—Congress reveals an intent to establish two distinct tests for standing to petition for review of administrative orders issued under the Act. The Secretary of Labor, pursuant to his general authority to prescribe regulations under the LHWCA, treats § 921(b)(3) and § 921(c) as if they created different standards. "Party in interest" means the Secretary, his designee, and anyone "directly affected" by the order. 20 C.F.R. § 801.2(a)(10). Under 20 C.F.R. § 802.410(a), by contrast, only persons "adversely affected or aggrieved" may petition for review in the court of appeals.

A finding that *Donzi* does not control the meaning of party in interest unfortunately does not end our inquiry. We cannot discuss the statutory and regulatory language relevant to this issue as briefly as we would like because Ingalls has drawn our attention to an apparent contradiction in the regulations that on its face seems to negate our interpretation of § 921(b)(3). Ingalls also demands that we invalidate 20 C.F.R. § 801.2(a)(10) as an unconstitutional extension of agency authority since it arguably goes beyond the "interest" requirement of § 921(b)(3) by conferring automatic standing on the Director. To resolve the issue of the Director's administrative standing we must turn to these problems in regulatory construction.

First, we will address the superficial inconsistency in the regulations. In addition to defining "party in interest" and limiting the parties who may appeal to the courts of appeals, the Secretary also states "[a]ny party *adversely affected* by a decision or order issued pursuant to one of the Acts may appeal that decision or order to the Board by filing a notice of appeal." 20 C.F.R. § 802.201 (emphasis supplied). Ingalls insists that this regulation equates "party in interest" to persons "adversely affected or aggrieved" in § 921(c). We disagree. Obviously, Ingalls' proposed construction of the regulation would be inconsistent with Congress' intent to create two

separate standing tests. We prefer to construe the regulations in a manner that is in harmony with that intent. It is not unusual or extraordinary to find that similar phrases have more than one meaning in statutory and regulatory sections that embody separate purposes. This happens frequently in the sentences that constitute our laws, and it is indicative, not of bureaucratic confusion, but of the truth that we have a finite set of words to describe an infinite variety of situations. Reading § 802.-2(a)(10) and § 802.201 together, we find that "adversely affected" in the context of § 921(b)(3) does not contradict the phrase "directly affected." As a practical matter, the Director will not petition the Board for review unless the administrative order has affected his interests in an adverse manner. The real question under the regulations, then, is not whether the effect is adverse, but whether the Director has an interest that has been affected directly by the order. We therefore, find that 20 C.F.R. § 802.201 adds no substantive meaning to the definition of "party in interest" in § 801.2(a)(10), and that the regulations interpreting § 921(b)(3) and § 921(c) do not impose the requirements of judicial standing on the parties who appear before the Board.

■ Now we must decide whether the definition of "party in interest" in § 801.-2(a)(10), which gives the Director an automatic right of review, is valid in view of the plain requirement in 33 U.S.C. § 921(b)(3) that a person demonstrate some "interest" before petitioning the Board for review. Unless clearly erroneous or unreasonable, the interpretation of a statute by a regulatory agency that is charged with administering it is given considerable deference by federal courts. *Florida v. Mathews*, 526 F.2d 319, 323 n.10 (5th Cir. 1976). *See also Marshall v. Whirlpool Corp.*, 593 F.2d 715, 721 (6th Cir. 1979), *aff'd*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980). Moreover, the Supreme Court has made it emphatically clear that absent some constitutional or statutory constraint "administrative agencies 'should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to dis-

charge their multitudinous duties.' " *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council*, 435 U.S. 519, 544, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978), *quoting from FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940). Bearing in mind the foregoing doctrines, we turn to the issue of whether 20 C.F.R. § 801.-2(a)(10) is a valid construction of § 921(b)(3). Resolution of this question depends on whether the Director's statutory duties under the LHWCA automatically establish an "interest" directly affected by a compensation order.

The Director of the Office of Workers' Compensation Programs is an office of administrative creation to which the Secretary of Labor has delegated the responsibility of administering the Act. 20 C.F.R. §§ 701.-201, 701.202(a). That Congress intended the Secretary to play an active role in implementing, administering and enforcing the LHWCA is manifest from a reading of the Act and from an examination of its legislative history. For example, the Director must furnish upon request information and assistance to claimants regarding their legal rights and medical and vocational rehabilitation services. 33 U.S.C. § 939(c). He must actively supervise the medical care rendered to injured employees. 33 U.S.C. § 907(b). He administers a special fund established by the Act for payment of certain benefits in enumerated circumstances. 33 U.S.C. § 944. And, as a preventive measure, the Act allows the Director to bring an action in federal court to restrain violations of his safety regulations. 33 U.S.C. § 941(e).

Ensuring the active involvement of the Secretary through his Director was one of the central purposes underlying the 1972 Amendments:

Section 39 of the Act [33 U.S.C. § 939] is amended to substantially increase the Secretary's responsibility for administering this program so far as providing services to employees.... It is intended that this assistance be all inclusive and

enable the employee to receive the maximum benefits due to him without having to rely on outside assistance other than that provided by the Secretary.

S.Rep.No. 92–1125, 92d Cong., 2d Sess. (1972); H.R.Rep.No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4710. In a later statement, the Committee on Human Resources, successor to the Committee on Labor and Public Welfare, issued a report on the Black Lung Benefits Reform Act, which speaks directly to the standing of the Director within the review procedures established by the LHWCA:

> In establishing the Longshore Act procedures it was the intent of this Committee to afford the Secretary the right to advance his views in the formal claims litigation context whether or not the Secretary had a direct financial interest in the outcome of the case. The Secretary's interest as the officer charged with the responsibility of carrying forth the interest of Congress with respect to the Act should be deemed sufficient to confer standing on the Secretary or such designee of the Secretary who has the responsibility for enforcement of the Act, to actively participate in the adjudication of claims before the Administrative Law Judge, Benefits Review Board, and appropriate United States Courts.

S.Rep.No. 95–209, 95th Cong., 1st Sess. 22 (1977).[10] *See also Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding & Dry Dock Co.,* 676 F.2d 110, 114 (4th Cir. 1982).

Despite persuasive evidence that Congress intended the Director to have standing as a party in interest under § 921(b)(3), Ingalls insists that the wide ranging supervisory responsibilities of the Director cannot justify the Director's interference when the claimant and employer agree on a settlement. The restrictive manner in which the Act treats lump-sum settlements belies this proposition. The LHWCA specifically limits the circumstances under which an employee may resolve his claim under the act through an agreed settlement with his employer.[11] If the private parties have agreed on the future liability of the employer, § 908(i)(A) demands that they obtain the approval of a deputy commissioner. If the settlement involves medical benefits, then the parties must obtain the approval of the Secretary. 33 U.S.C. § 908(i)(B). The settlement will not receive the approval of the Secretary or the deputy commissioner unless it is "in the best interests" of the claimant. The Board, in finding that administrative law judges share the authority to approve settlements under section 8(i)(A), has established in addition to the statutory prerequisites a set of criteria that must be considered before a settlement can be deemed "in the best interests" of the claimant. *Clefstad, supra,* 9 BRBS at 222.

The Director's interest as administrator within this procedural scheme for settlement approval appears obvious. First, he must make sure that the deputy commissioners and the administrative law judges are acting within their authority. Second, he must examine orders approving settlement to determine whether the approving authority considered the correct criteria. The Director's participation in the case before us, more clearly than any example we might conjure, demonstrates the need for us to respect his "watchdog" role. We, therefore, do not regard the Director's exercise of his right to initiate review of an order approving settlement as "officious intermeddling." To the contrary, it is simply part of his statutory obligation to ensure the fair and adequate compensation of injured employees.

*Office of Workers' Compensation Programs v. Boughman,* 545 F.2d 210, 216 (D.C.Cir.1976).

---

**10.** Although this 1977 report does not have the authoritative value of legislative history made contemporaneously with the passage of the 1972 amendments, it nevertheless is persuasive extrinsic evidence of congressional intent, particularly in view of Congress' silence on the standing question when it passed the 1972 Amendments to the LHWCA. *See Director,*

**11.** In a similar manner, Congress has prohibited waiver, 33 U.S.C. § 915(b), and assignment, 33 U.S.C. § 916, of LHWCA claims, except as permitted by other sections of the Act.

In light of the Director's involvement in the administration and enforcement of the Act and Congress' intent with respect to that role, 20 C.F.R. § 201.2(a) is a reasonable and valid construction of 33 U.S.C. § 921(b)(3). Accordingly, we hold that the Benefits Review Board properly granted the Director standing to petition for review of the ALJ's order approving settlement.

## IV. AUTHORITY OF ADMINISTRATIVE LAW JUDGES TO APPROVE AGREED SETTLEMENTS UNDER THE LHWCA

■ Having determined that the Director is a proper party before this Court, we reach the question of whether an administrative law judge has the authority to approve a compromise settlement under 33 U.S.C. § 908(i)(A). That subsection provides:

> Whenever the deputy commissioner determines that it is for the best interests of an injured employee entitled compensation, he may approve agreed settlements of the interested parties, discharging the liability of the employer for such compensation, notwithstanding the provisions of section 915(b) and section 916 of this title. . . .

Interpreting § 908(i)(A) in *Clefstad v. Perini North River Associates*, 9 BRBS 217, 220, BRB No. 77–884 (1978), the Benefits Review Board found that "both deputy commissioners and administrative law judges, within their respective spheres of authority, are empowered by the Act to approve or disapprove agreed settlements by the parties according to the claimant's best interests." The Board relied primarily on legislative history accompanying the 1972 Amendments to § 908 and on the 1972 amendment of 33 U.S.C. § 919(d). The latter amendment transferred "all powers, duties, and responsibilities" with respect to administrative hearings under the Act from the deputy commissioner to administrative law judges. Looking to the Administrative Procedure Act (APA) to define the scope of an officer's hearing functions, the Board determined that settlement approval lies within the adjudicative province of the ALJ once he "dons his judicial hat." 9 BRBS at 222. It is for this Court to decide whether the Board's reasoning in *Clefstad* as applied to this case is correct.

No circuit court has discussed and decided the precise issue before us. In *Marine Concrete v. Director, Office of Workers' Compensation Programs*, 645 F.2d 484 (5th Cir. 1981), this Court construed a companion section, § 908(i)(B), which provides:

> Whenever the Secretary determines that it is for the best interests of injured employee entitled to medical benefits, he may approve agreed settlements of the interested parties, discharging the liability of the employer for such medical benefits.

33 U.S.C. § 908(i)(B). We held that administrative law judges were not empowered by this section to approve settlements involving medical benefits: " 'It is not our province . . . to write legislation that Congress either overlooked or designedly chose not to write.' " *Id.* at 487, *quoting from S. H. DuPuy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1459, 47 L.Ed.2d 732 (1976).[12] Though we noted the legislative history behind § 908(i)(A), we did not address the authority of an ALJ to approve settlements under that section.[13] Confronting the issue for

---

12. In *DuPuy* the Seventh Circuit held that neither deputy commissioners nor administrative law judges are authorized to approve settlements of death claims under the LHWCA. A death claim is not lodged under § 908 but under 33 U.S.C. § 909, which is silent on whether settlements of death claims are permitted. The court did not decide whether an ALJ has the power to approve a settlement agreement in the case of an injured employee. 519 F.2d at 541.

13. *Ingalls Shipbuilding Corp. v. Joyner*, 587 F.2d 649 (5th Cir. 1978), on petition for rehearing, 587 F.2d 650 (5th Cir. 1979), is another case related to the issue at hand but not controlling. In *Joyner*, we considered the issue of whether this Court has the power to approve a compromise settlement and dismiss an appeal from a Board decision. The employer's settlement offer was conditioned on our approval. It provided for withdrawal if we remanded to the Director for approval. We, therefore, followed

the first time, we stress that although this Court will defer to the Board's decision in some instances, *see Alabama Dry Dock & Shipbuilding Co. v. Kininess*, 554 F.2d 176, 177 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977), it is elementary that we are not bound by an erroneous interpretation of a statute. *Charter Limousine v. Dade County Board of County Commissioners*, 678 F.2d 586, 588 (5th Cir. 1982); *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1011 (5th Cir. 1981), *cert. denied*, 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1982). We do not need precedent to recognize that § 908(i)(A) is plain on its face in stating that deputy commissioners may approve agreed settlements. Generally when there is no ambiguity in the words of a statute, a court may not consider legislative history or other rules of construction. *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); *Connecticut v. United States E.P.A.*, 656 F.2d 902, 909 (2d Cir. 1981); *Glenn v. United States*, 571 F.2d 270, 271 (5th Cir. 1978). While we think § 908(i)(A) is sufficiently clear to fall within this simple rule of construction, Ingalls would argue that other sections in the 1972 Amendments to the LHWCA, specifically 33 U.S.C. § 919(d), give rise to the possibility of alternative interpretations.

Section 919(d) of the Act provides:

Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with the provisions of Section 554 of Title 5. Any such hearing shall be conducted by an administrative law judge qualified under 3105 of that Title. All powers, duties, and responsibilities vested by this Chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.

33 U.S.C. § 919(d). We do not think the addition of APA procedures or the delegation of responsibilities to administrative law judges in the Act contradicts the plain mandate of § 908(i)(A) that only deputy commissioners can approve agreed settlements.

The context in which § 919(d) was passed suggests that Congress did not intend to transfer the power to approve settlements to the administrative law judges. Prior to the 1972 Amendments, deputy commissioners could approve agreed settlements only with the approval of the Secretary. *See* S.Rep.No.92–1125, 92d Cong., 2d Sess. 38 (1972). In 1972, Congress eliminated the necessity of obtaining the Secretary's approval of settlements under § 908(i)(A), but inserted that prerequisite in new § 908(i)(B) for claims involving medical benefits. *See Marine Concrete, supra*, 645 F.2d at 486. Section 914(j), 33 U.S.C., which allows deputy commissioners in specified instances to discharge an employer's liability upon payment of a lump sum, also requires deputy commissioners to obtain the Secretary's approval. This brief glimpse into legislative history tells us two things. First, when the "power, duties, and responsibilities" of the deputy commissioners with respect to hearings were delegated to administrative law judges in 1972, the deputy commissioners did not have the independent authority to approve compromise settlements under § 908(i)(A). Their approval had to be accompanied by the approval of the Secretary. Second, the caution with which Congress has granted any authority to approve settlements suggests that so radical a change as delegating that responsibility to administrative law judges is likely to have been treated explicitly in the statute. *See* S.Rep.No.1988, 75th Cong., 3d Sess. 6 (1938).

Furthermore, the APA does not confer the power to approve settlements on administrative law judges in LHWCA proceed-

---

our action in an unreported case, *Ingalls Shipbuilding Corp. v. Spicer* (5th Cir. 1975) [Slip Op. No. 74–3465, April 18, 1975], and approved the settlement without confronting the problem of jurisdiction. Since *Spicer* also avoids the jurisdictional issue and since the disposition of

*Joyner* is expressly limited to its facts, *Joyner, supra*, 587 F.2d at 650, we do not regard these circumscribed decisions as creating a precedential rule that controls our conclusion in this case. *See Marine Concrete, supra*, 645 F.2d at 488.

ings. Ingalls and Bethlehem Steel as amicus rely heavily on the "[n]otwithstanding any other provisions of this chapter" qualification in § 919(d). When we turn to the APA, however, we find similar qualifications. Section 556, 5 U.S.C., which sets out the powers and duties of hearing officers, specifically provides that those powers are "subject to the published rules of the agency." *See also* 5 U.S.C. § 554(c)(1).[14] The regulations promulgated under the LHWCA are perfectly consistent with the clear import of § 908(i)(A) for they clearly contemplate that only the deputy commissioner will approve agreed settlements under § 908(i)(A). 20 C.F.R. § 702.241. We, therefore, conclude once again that "[t]he general provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, ... do not alter the later-enacted and more specific provisions of the LHWCA." *Marine Concrete, supra*, 645 F.2d at 487.

Even assuming that some ambiguity exists between the powers delegated in § 919(d) of the Act and the restrictions on settlement in § 908(i)(A), we find no support in the legislative history explaining § 908(i)(A) to justify an interpretation contrary to the plain meaning of the words used.[15] Too much ado has been made over a statement in the Senate and House Reports accompanying the 1972 Amendments, which, when read of context, suggests that Congress inadvertently said "deputy commissioner" when it meant "deputy commissioner, hearing officer, and court." The Committee on Labor and Public Welfare in a section-by-section analysis of proposed bill S.2318, reported:

> Subsection 8(i)(A) provides that the *deputy commissioner, Board, or Court* may approve a settlement discharging an employer from liability for compensation if he deems it to be in the best interests of the employer.

S.Rep.No.92–1125, 92d Cong., 2d Sess. 26 (1972) (emphasis supplied). We noted this statement in *Marine Concrete* suggesting that it supported "the proposition that the ALJ has authority to approve settlements under Subsection A," *Marine Concrete, supra*, 645 F.2d at 486 n.2, and therefore, it is perhaps the fault of this Court that the parties have expended an undue amount of time and energy discussing the effect of the statement on the decision at hand. We hope our decision today will eliminate any confusion that has arisen over the legislative history of § 908(i)(A). The irrelevance of this committee comment to the issue presented is immediately, and painfully, apparent upon turning to the section in the report that sets out proposed bill S.2318. The analysis in the report refers to a proposed statutory section that explicitly allows either "the deputy commissioner or hearing officer or Board or court" to approve agreed settlement. S.Rep.No.92–1125, 92d Cong., 2d Sess. 38 (1972). This version of the proposed bill was not the final form adopted by both Houses. 33 U.S.C. § 908(i)(A); S.2318, 92d Cong., 2d Sess., 118 Cong.Rec. 36,390 (1972); H.R. 12,006, 92d Cong., 2d Sess., 118 Cong.Rec. 36,376 (1972). That Congress omitted "Board or court" from the final version of the bill suggests even more strongly that it intended to limit the power of settlement approval under § 908(i)(A) to deputy commissioners.

■ We have discovered nothing apart from this one statement in the committee reports referring to an earlier version of the amendments to suggest that § 908(i)(A)

---

**14.** Section 554(c)(1) provides that the agency shall give interested parties opportunity for:

(1) the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, *the nature of the proceedings, and the public interest permit.*

5 U.S.C. § 554(c)(1) (emphasis supplied). The italicized clause allows for the special situation presented here: where the particular agency statute provides for a limited, clearly defined procedure of settlement approval, the general provision of the APA will not supplant it.

**15.** Turning at last to the legislative history underlying § 908(i)(A), we are mindful of the common sense rule "the plainer the language [of the statute], the more convincing contrary legislative history must be." *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973).

does not mean exactly what it says. "Congress has put down its pen, and [the Court] can neither rewrite Congress' words nor call it back 'to cancel half a line.'" *Director, Office of Workers' Compensation Programs v. Rasmussen,* 440 U.S. 29, 47, 99 S.Ct. 903, 913, 59 L.Ed.2d 122, 135 (1979). We hold accordingly. When the parties to proceedings under the LHWCA find that they can agree to a settlement of the compensation claim after the case has been referred to an ALJ, the ALJ must remand the case to the deputy commissioner for ultimate approval of the settlement. While we find no language in the Act that would prevent an ALJ from recommending a settlement, only deputy commissioners can approve agreed settlements under § 908(i)(A).

Though this result may impede "judicial efficiency, *see Clefstad, supra,* 9 BRBS at 222, to a slight extent, it is consistent with the policies underlying the LHWCA which overshadow the usual tendency of the courts to encourage the settlement of claims. When Congress first amended the LHWCA to afford interested parties the opportunity to reach a settlement agreement, it did so with caution: "Experience, however, warns against lump-sum payments merely as a convenience in disposing [of LHWCA claims]. Large payments of compensation are in most cases soon dissipated, or improvidently or foolishly invested, leaving the employee an early dependent upon charity." S.Rep.No.1988, 75th Cong., 3d Sess. 6 (1938). *See also* A. Larson, The Law of Workmen's Compensation § 82.41 (1976). The speed with which settlements are brought about is, therefore, of less importance than assurance that the settlement is in the claimant's best interest. Insofar as our ruling today imposes another check on the agreed resolution of claims, it furthers the Act's conservative approach to settlement approval.[16]

## V. CONCLUSION

Asserting jurisdiction under the *Gillespie* exception to the final judgment rule, we

decide today that the Director, Office of Workers' Compensation Programs, is the appropriate party-respondent under Fed.R. App.P. 15(a), and therefore, that he has standing to respond to Ingalls' petition for review in this Court under § 921(c). We also conclude that 20 C.F.R. § 801.2(a)(10) is a reasonable and valid construction of "party in interest" as it is used in § 921(b)(3), and thus we affirm the Board's finding that the Director was entitled to petition for review of the order approving settlement. Finally, this Court holds that administrative law judges do not have the authority to approve lump-sum settlements under 33 U.S.C. § 908(i)(A). For this reason, we reverse and remand to the Benefits Review Board for proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

**16.** Because we find that administrative law judges lack the authority to approve lump sum settlements, we do not reach the question of whether the ALJ below considered the proposed settlement in accordance with the criteria set out by the Board in *Clefstad, supra,* 9 BRBS at 222.